## Commonwealth *versus* Joseph Drew.

The defendant having from time to time deposited money in and drawn checks upon a bank, under a fictitious name, at length, for the purpose of defrauding the bank, drew such a check when he had no money deposited, and presented it himself, and the bank paid him the amount of it; whereupon he was indicted under *St.* 1815, *c.* 136, against obtaining money by false pretences with intent to defraud. *Held*, that the assumption of a fictitious name was a false pretence, within the meaning of the statute, but that as it appeared, that it had no influence in inducing the bank to pay the money, proof of it would not support the indictment.

*Held* also, that merely opening and keeping an account in the bank, though as part of a stratagem by which the defendant intended to practice the fraud, was not a false pretence, within the statute.

*Held* also, that the mere drawing and presenting the check and receiving the money upon it from the bank, were not a false pretence, within the statute. *Aliter, it seems,* if the drawer of a check on a bank, passes it to a third person, when he has no funds nor credit in the bank, and knows that the check will not be paid.

THE defendant was tried, before *Morton* J., upon two indictments, in each of which he was charged with having procured money from the Hancock bank in Boston, by false pretences and with intent to defraud the bank, upon two several occasions.

The pretences alleged were, 1. that the defendant assumed the name of Charles Adams; 2. that he pretended that he wished to open an honest and fair account with the Hancock bank, and to deposit and draw for money in the usual manner and ordinary course of business ; and 3. that he pretended that two checks, described in the indictment, were good, and that he had in deposit the amount for which they were drawn.

It was proved, among other things, that the defendant began to deposit money in the bank early in December 1835, and that he continued to deposit and draw, at various times and in various sums, until the 27th of January, 1836, on which day, having only $ 10 deposited to his credit, he drew a check for $ 100, which was paid at the bank.

On the 30th of January, 1836, a check for $ 350 was drawn by the defendant and paid at the bank, he having made no deposit since the payment of the check presented on the 27th of January.

The defendant deposited and drew his checks by the name of Charles Adams, and there was another person named Charles

Adams who deposited at the bank at the same time ; but 't was not contended on the part of the Commonwealth, that the checks were paid because of the assumption by the defendant of the name of Charles Adams, nor that any mistake was made as to which person of that name drew the check.

Samuel B. Dyer, a witness on the part of the Common wealth, testified that he was the paying and receiving teller of the bank ; that the defendant first did business at the bank on the 12th of December, 1835 ; that he asked to have a large bill of the United States bank exchanged for small bills, which was done ; that before he left the bank he made a deposit of a considerable sum, including the bills just before received as above ; that being asked in what name he wished to deposit, he said, in the name of Charles Adams ; that he saw the defendant several times afterwards, when he presented his checks for payment ; that the defendant usually drew his checks in the bank, at the desk kept for that purpose, and presented them himself, and that this was usually done by him about 12 o'clock, the most busy time in the forenoon ; that the witness had no recollection of the presentation or payment of either of the two checks in question, which were overdrafts ; that he knew they were paid out of his drawer, and by his money, because he found the checks in his drawer and missed sums of money corresponding with the amount of the checks ; that he believed that the check of January 27th was not paid by himself, but by the bank messenger for him, who took his place a few minutes at the counter, the messenger having told him he had paid a check of Charles Adams ; that the witness paid checks of the defendant unhesitatingly, because he had deposited for some time, and the witness presumed his checks to be good, from the general character of his account, and having seen him conversing with the president of the bank, the witness presumed he was acquainted with the president ; that if the witness paid either of the two checks in question, without inquiring at the desk of the book-keeper, or looking at the balance-sheet, to ascertain whether the defendant had money to that amount deposited, it was upon these grounds that he so paid.

It was in evidence, that the book-keeper's desk was a few feet from the teller's counter ; that when the teller doubted

whether a check should be paid, he inquired of the book-keeper, or looked at the balance-sheet kept by the book-keeper, which was made up to the end of every day, and lay upon the desk for the inspection of the teller or book-keeper at all times.

It was testified by the teller, that the overdraft of the 27th of January was not reported for some days after it happened; and the balance-sheet showed that it did not appear upon that book until the 1st of February.

In order to show that the defendant overdrew with a fraudulent intent, it was proved, amongst other things, that he overdrew, about the same time, at the Bunker Hill bank in Charlestown, and the Traders' bank in Boston.

The counsel for the defendant contended, that there was no evidence of the procuring of money by any false pretence; that the mere drawing a check and presenting it at the counter of the bank to the teller for payment, no words being spoken and no false appearance or token presented or held out, although the drawer knew he had no funds deposited there, was not a "false pretence," within the meaning of the statute upon that subject; and that such presentation of a check, with intent to defraud the bank, and receiving the money upon the check, did not constitute the crime of obtaining money by false pretences, as defined by the statute; that it was no more than an appeal to the books of the bank, kept by the proper officer, and an offer to receive what should there be found due. But the judge overruled these objections, and instructed the jury, that if they believed that the defendant became a depositor at the bank under a pretence of doing business there in the usual manner, but with the fraudulent design to obtain the money of, and cheat the bank, and drew the checks and presented them at the bank for payment, knowing that he had not funds deposited sufficient to pay them, and that he did this intending to defraud the bank of the sums so overdrawn, although no words were spoken and no other token exhibited, and if he actually got the money, he was guilty of the crime of obtaining money by false pretences within the meaning of the statute. And it was left to the jury to decide upon all the evidence, whether

16

Common-
wealth
*v.*
Drew.

the false pretences and the averments contained in the ind ct-
ment were proved to their satisfaction or not.

. The jury found a verdict against the defendant upon both
indictments.

The defendant moved for a new trial, because of the ruling
and instructions of the judge, and because the verdict, as to
the presentation of the checks by the defendant, was not sup-
ported by the evidence.

*April 5th.*   *H. H. Fuller* supported the motion.   As to the third false
pretence, he cited *St.* 1815, *c.* 136 ; 3 Chit. Crim. Law, 997 ;
*Allen's case*, 3 City Hall Recorder, 118 ; *Stuyvesant's case*,
4 City Hall Recorder, 156 ; *People* v. *Conger*, 1 Wheeler's
Crim. Cas. 448 ; *People* v. *Dalton*, 2 Wheeler's Crim. Cas.
178 ; *Witchell's case*, 2 East's P. C. 830 ; *Story's case*, Russ.
& Ryan, 81 ; *Freeth's case*, ibid. 127.

*Austin*, (Attorney-General,) and *Parker*, (District-Attor-
ney,) for the Commonwealth, cited Roscoe on Crim. Ev. (2d
ed.) 417 *et seq.* ; *Lockett's case*, 1 Leach, 110 ; *Commonwealth*
v. *Wilgus*, 4 Pick. 177 ; 2 East's P. C. 828 ; *Young* v. *The
King*, 3 T. R. 102 ; *Rex* v. *Jackson*, 3 Campb. 370.

*June 28th.*   Morton J. delivered the opinion of the Court.   These in-
dictments are founded upon *St.* 1815, *c.* 136.   The first sec
tion provides, "that all persons who knowingly and designedly,
by false pretence or pretences, shall obtain from any person or
persons money, goods, wares, merchandise or other things,
with intent to cheat or defraud any person or persons of the
same, shall on conviction " be punished &c. as therein speci-
fied.   This section, which is a copy of *St.* 30 *Geo.* 2, *c.* 24,
§ 1, is revised and combined with some provisions in relation
to other similar offences, in the Revised Stat. *c.* 126, § 32.

To constitute the offence described in the statute and set
forth in these indictments, four things must concur and four
distinct averments must be proved.

1.  There must be an intent to defraud ;

2.  There must be an actual fraud committed ;

3.  *False pretences* must be used for the purpose of perpe-
trating the fraud ; and

4  The fraud must be accomplished by means of the false

pretences made use of for the purpose, viz. they must be the cause which induced the owner to part with his property.

It is very obvious that three of the four ingredients of the crime exist in the present case. The fraudulent intent, the actual perpetration of the fraud, and the fact that some of the pretences used were the means by which it was accomplished, are established by the verdict of the jury. And although the prisoner's counsel has objected to the sufficiency of the evidence, yet we see no reason to question the correctness of their decision. It only remains for us to inquire, whether the artifices and deceptions practised by the defendant and by means of which he obtained the money, are the *false pretences* contemplated by the statute.

The *pretences* described in the indictments and alleged and shown to be false, are,

1. That the defendant assumed the name of Charles Adams:

2. That he pretended that he wished to open an honest and fair account with the Hancock bank and to deposit and draw for money in the usual manner and ordinary course of business.

3. That he pretended that the checks were good, and that he had in deposit the amount for which they were drawn.

The first is clearly a false pretence within the meaning of the statute. And had the money been obtained by means of the assumption of this fictitious name, there could be no doubt of the legal guilt of the defendant. The eminent lawyer who filled the office of mayor of New York when the adjudication referred to by the defendant's counsel was made, says the false pretences must be the sole inducement which caused the owner to part with his property. *People* v. *Conger*, 1 Wheeler's Crim. Cas. 448 ; *People* v. *Dalton*, 2 Ibid. 161. This point is doubtless stated too strongly ; and it would be more correct to say, that the false pretences, either with or without the coöperation of other causes, had a decisive influence upon the mind of the owner, so that without their weight, he would not have parted with his property. *People* v. *Haynes*, 11 Wendell, 557. But in this case the assumed name, so far from being the *sole* or *decisive* inducement, is clearly shown to have had no influence whatever. The bank officers did not confound the defendant with Charles Adams, and it does not appear that the

defendant knew that there was any other person by that name
He never claimed any credit on account of his name, and the
coincidence might have been accidental. At any rate it had
no influence upon the credit of either, nor any effect upon their
accounts or the payment of their checks.

2. The opening and keeping an account with the Hancock
bank might have been, and doubtless was, a part of a cunning
stratagem, by which the defendant intended to practise a fraud
upon that bank. But the business was done and the account
kept in the usual manner. The defendant made his deposits
and drew his checks like other customers of the bank. He
made no representation of the course he intended to pursue
and gave no assurance of integrity and fair dealing. And we
can see nothing in the course of this business, constituting it a
false pretence, which would not involve the account of any de-
positor who might overdraw, in the same category.

3. The *pretence*, if any such there were, that the check was
good, or that the defendant had funds in the bank for which he
had a right to draw, was *false*. He had no such funds. Did
the defendant make any such pretence ? He made no state-
ment or declaration to the officers of the bank. He merely
drew and presented his checks and they were paid. This was
done in the usual manner. If then he made any pretence, it
must result from the acts themselves.

What is a false pretence, within the meaning of the statute ?
It may be defined to be a representation of some fact or cir-
cumstance, calculated to mislead, which is not true. To give
it a criminal character there must be a *scienter* and a fraudulent
intent. Although the language of the statute is very broad, and
in a loose and general sense, would extend to every misrepre-
sentation, however absurd or irrational or however easily de-
tected ; yet we think the true principles of construction render
some restriction indispensable to its proper application to the
principles of criminal law and to the advantageous execution of
the statute. We do not mean to say that it is limited to cases
against which ordinary skill and diligence cannot guard ; for
one of its principal objects is to protect the weak and credu-
lous from the wiles and stratagems of the artful and cunning ;
but there must be some limit, and it would seem to be unrea-

sonable to extend it to those who, having the means in their own hands, neglect to protect themselves. It may be difficult to draw a precise line of discrimination applicable to every possible contingency, and we think it safer to leave it to be fixed in each case as it may occur. 2 East's P. C. 828; *Young* v. *The King*, 3 T. R. 98.

It is not the policy of the law to punish criminally mere private wrongs. And the statute may not regard naked lies, as false pretences. It requires some artifice, some deceptive contrivance, which will be likely to mislead a person or throw him off his guard. He may be weak and confiding and his very imbecility and credulity should receive all practical protection. But it would be inexpedient and unwise to regard every private fraud as a legal crime. It would be better for society to leave them to civil remedies. Roscoe on Crim. Ev. (2d ed.) 419; *Goodhall's case*, Russ. & Ryan, 461.

The pretence must relate to past events. Any representation or assurance in relation to a future transaction, may be a promise or covenant or warranty, but cannot amount to a statutory false pretence. They afford an opportunity for inquiring into their truth, and there is a remedy for their breach, but it is not by a criminal prosecution. *Stuyvesant's case*, 4 City Hall Recorder, 156; Roscoe on Crim. Ev. (2d ed.) 422; *Rex* v. *Codrington*, 1 Carr. & Payne, 661. The only case, *Young* v. *The King*, 3 T. R. 98, which has been supposed to conflict with this doctrine, clearly supports it. The false pretence alleged was, that a bet had been made upon a race which was to be run. The contingency which was to decide the bet was *future*. But the making of the bet was *past*. The representation which turned out to be false was, not that a race *would be* run, but that a bet *had been* made. The false pretence therefore in this case related to an event already completed and certain, and not to one which was thereafter to happen and consequently uncertain. And the decision was perfectly consistent with the doctrine and law here laid down.

A false pretence, being a misrepresentation, may be made in any of the ways in which ideas may be communicated from one person to another. It is true that the eminent jurist before referred to, in the cases cited held that it could be made only

by verbal communications, either written or oral. If this be correct, no acts or gestures, however significant and impressive, could come within the statute. And mutes, though capable of conveying their ideas and intentions in the most clear and forcible manner, could hardly be brought within its prohibition. Can it make any difference in law or conscience, whether a false representation be made by words or by the expressive motions of the dumb ? Each is a language. Words are but the signs of ideas. And if the ideas are conveyed, the channel of communication or the garb in which they are clothed, is but of secondary importance. And we feel bound to dissent from this part of these decisions. In this we are supported by the English cases. *Rex* v. *Story,* Russ. & Ryan, 81 ; *Rex* v. *Freeth,* Ibid. 127.

The representation is inferred from the act, and the pretence may be made by implication as well as by verbal declaration. In the case at bar the defendant presented his own checks on a bank with which he had an account. What did this imply ? Not necessarily that he had funds there. Overdrafts are too frequent to be classed with false pretences. A check, like an order on an individual, is a mere request to pay. And the most that can be inferred from passing it is, that it will be paid when presented, or in other words, that the drawer has in the hands of the drawee either funds or credit. If the drawer passes a check to a third person, the language of the act is, that it is good and will be duly honored. And in such case, if he knew that he had neither funds nor credit, it would probably be holden to be a false pretence.

In the case of *Stuyvesant,* 4 City Hall Recorder, 156, it was decided that the drawing and passing a check was not a false pretence. But in *Rex* v. *Jackson,* 3 Campb. 370, it was ruled that the drawing and passing a check on a banker with whom the drawer had no account and which he knew would not be paid, was a false pretence within the statute. This doctrine appears to be approved by all the text writers, and we are disposed to adopt it. Roscoe on Crim. Ev. (2d ed.) 419.

But to bring these cases within the statute, it must be shown that the drawer and utterer knew that the check would not be paid, and in the cases cited it appeared that he had no account

with the banker. In these respects the case at bar is very dis-
tinguishable from the cases cited. If the checks in question
had been passed to a third person, it could not be said that the
defendant knew that they would not be paid. On the contrary,
he had an open account with the bank, and although he knew
there was nothing due to him, yet he might suppose that they
would be paid. And the fact that he presented them himself,
shows that he did not know that they would be refused.

The defendant presented the checks himself, at the counter
of the bank. They were mere requests to pay to him the
amount named in them, couched in the appropriate and only
language known there ; and addressed to the person whose pe-
culiar province and duty it was to know whether they ought to
be paid or not. He complied with the requests, and charged
the sums paid, to the defendant, and thus created a contract
between the parties. Upon this contract the bank must rely
for redress.

This case lacks the elements of the English decisions.
And we think it would be an unwise and dangerous construc-
tion of the statute, to extend it to transactions like this. This
case may come pretty near the line which divides private frauds
from indictable offences ; and at first we were in doubt on
which side it would fall. But, upon a careful examination, we
are well satisfied that it cannot properly be brought within the
statute.

*Verdict set aside and new trial granted.*