The order of the Bankruptcy Court dismissing Appellants' complaint is AFFIRMED.

### A.T.&T. UNIVERSAL CARD SERVICE CORP.

v.

### Liet Van NGUYEN.

### Civil Action No. 96–CV–40132–RGS.

United States District Court,
D. Massachusetts.

Feb. 26, 1997.

terized as a simple refusal to accept Appellants' view of their ongoing dispute regarding the extent and character of Debtor's interest in the New Hampshire real estate.

Mark Lindner, Needham, MA, for AT&T Universal Card Service Corp.

Jane Shepard, Worcester, MA, for Liet Nguyen.

*MEMORANDUM AND ORDER FROM AN APPEAL OF AN ORDER OF THE UNITED STATES BANKRUPTCY COURT*

STEARNS, District Judge.

The appellant, A.T.&T. Universal Card Service Corp. (AT&T), brought this appeal from an order of the Bankruptcy Court, dated April 30, 1996, summarily granting a motion for summary judgment filed by the appellee/debtor, Liet Van Nguyen. For present purposes, the parties agree to the following facts. On August 29, 1995. Nguyen took a $4,000 cash advance on his AT&T MasterCard. At the time, Nguyen was in good standing with AT&T . His card account had a zero balance and a $4,000 credit limit. Before receiving the advance. Nguyen signed a cash advance slip at the Commerce Bank in Worcester stating:

I hereby request the issuer of the charge card identified above to pay the bearer the amount shown as TOTAL hereon.

I hereby confirm that I will pay said amount, with any charges due thereon. to

said issuer in accordance with the terms of the charge card agreement governing the use of said card.

Nguyen made no other written or oral representation.

Sixty-four days later, on November 1, 1995, Nguyen filed a Chapter 7 bankruptcy petition. During the interim, Nguyen made no payments to AT&T. According to Nguyen's petition, his sole source of income was a $773 monthly social security stipend. He declared $38,000 in unsecured credit card debt, including $4,030.16 owed to AT&T. He also listed $31,000 in gambling losses.

On February 5, 1996, AT&T filed an adversary proceeding objecting to the discharge of its debt. On April 9, 1996, Nguyen filed a motion for summary judgment, arguing that under *In re Cox*, 182 B.R. 626 (Bankr.D.Mass.1995), AT&T was estopped from proving fraud or false pretense on his part. AT&T opposed the motion. On April 30, 1996, before Nguyen had answered discovery, Judge Queenan, the author of *Cox*, granted Nguyen summary judgment "for essentially the same reasons which were given in the *Cox* decision."

AT&T's main contention on appeal is that Cox is wrongly decided. AT&T argues that under § 523(a)(2)(A) Nguyen's debt is nondischargeable. 11 U.S.C. § 523(a)(2) provides that:

(a) A discharge under this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;[1]

---

1. Congress apparently exempted financial statements from subparagraph (A) in an attempt to protect debtors from perceived abuses of the statute by credit card companies. The legislative history indicates concern with the practice of some lenders of asking prospective customers to list existing debts on preprinted credit card applications. The forms generally did not give the loan applicant enough room to list more than three or four debts. Frequently, a lender's representative would instruct the applicant to include only the most significant debts. Often, on the bottom of the form. a preprinted statement would appear attesting that the loan applicant had listed all outstanding debt. When the debtor eventually attempted to discharge the credit card debt, the form was offered as proof that the debtor had actively deceived the credit card lender. H.R.Rep. No. 959, 95th Cong., 1st Session 130–131 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News, pp. 6091–1092.

(B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

In 1984, Congress added subsection (C) to 11 U.S.C. § 523(a)(2) to combat the practice of "loading up" on credit card debt in the expectation of bankruptcy. The weapon Congress deployed was a presumption of non-dischargeability. Subparagraph (C) states that:

for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable.

In 1994, Congress extended the presumption of subparagraph (C) to sixty days and increased the threshold amount of luxury goods or services to $1000.

The parties agree that the subparagraph (C) is inapplicable to Nguyen's case because the debt was incurred outside the sixty day period. AT&T argues that the debt is nonetheless nondischargeable under § 523(a)(2)(A) because it was obtained by "false pretenses, a false representation, or actual fraud." AT&T contends that Nguyen engaged in fraudulent misrepresentation by taking the advance with knowledge (or in reckless disregard) of his lack of ability (or intent) to repay. *In re Borste*, 117 B.R. 995 (Bankr.W.D.Wash.1990).

Judge Queenan held in *Cox* that fraud under § 523(a)(2)(A) cannot be inferred from a credit card debtor's implied representation of an ability to repay.

It seems clear from the statute's wording that a debtor's implied representation of his ability to pay is outside the statute's coverage. Such a representation is of the debtor's 'financial condition.' This type of representation is expressly excluded from subparagraph (A).... Nor does such a representation come under subparagraph (B). That subparagraph applies only to a 'statement in writing ... respecting the debtor's. financial condition.' ... Less clear is the effect of this exclusion upon an *implied misrepresentation of intent to pay.* An individual's intent, that most hidden of human attributes, is invariably ascertained from the surrounding circumstances. When the question concerns intent to pay, the individual's ability to pay is critical ... Congress [did not] intend to include within subsection (A) implied misrepresentation of intent to pay when a finding of lack of intent [is] largely based on the debtor's lack of ability, which itself cannot be the subject of an implied representation covered by the statute[.]

[S]ubparagraph (A) encompasses neither "loading up" charges nor implied misrepresentations of intent to pay when both the representation and the absence of intent to pay must be based upon inference.

Congress ... in 1984 enacted subparagraph (C) to provide a remedy [for "loading up"].... Because of its specified time periods, specific dollar amounts and definition of 'luxury goods and services,' subparagraph (C) is relatively uncomplex. That makes its application quite predictable. I conclude Congress intended subparagraph (C) to provide the exclusive remedy against 'loading up.'

*In re Cox*, 182 B.R. at 629. 635. 636.

The philosophy of *Cox* has its origins in nineteenth century cases holding that a borrower's predictions regarding his future ability to pay his debts are not actionable as false pretenses. *See Commonwealth v. Drew*, 36 Mass. 179, 185 (1837). There is an historical explanation behind these cases, but not much modern support. As Justice Traynor pointed out in the often-cited case of *People v. Ashley*, 42 Cal.2d 246, 267 P.2d 271 (Cal.1954), a promise made without an intent to perform might as easily be construed as a false representation of the maker's present state of mind as it might be a prediction of a future act or a mere "naked lie." Even in Massachusetts, *Drew* is of doubtful authority. Cases subsequent to *Drew* have held a per-

son liable for false pretenses where he misrepresented his financial condition as an inducement to another to part with something of value. see, e.g., *Commonwealth v. Quinn*, 222 Mass. 504, 513–514, 111 N.E. 405 (1916), or where he misrepresented his present intention to perform a future act. see, e.g., *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 709–710, 563 N.E.2d 188 (1990). Cf. *In re Murphy*, 190 B.R. 327, 332 n. 6 (Bkrtcy.N.D.Ill.1995).

Modern bankruptcy cases are largely in accord.

> By using the credit cards. Naimo (the debtor) made two additional implied representations "(1) that the debtor has the intent to repay the credit card debt; and (2) that the debtor has the ability to repay the debt." It is settled law that if the creditor can prove that at the time the credit card charges were made, the debtor knew or should have known that he or she would be unable to repay them, the court will infer that the two representations referred to above were made with the intent to deceive the creditor.

*In re Naimo*, 1995 WL 163598, *1 (E.D. Pa. April 6, 1995), quoting from *In re McDonald*, 177 B.R. 212, 216 (Bankr.E.D.Pa.1994).

 If what Judge Queenan means to say is that an intent to deceive cannot be inferred solely from a failure to perform an implied promise, I agree.[2] Similarly, if he means to say that the inability to repay a debt at the time it is incurred, particularly a credit card debt which the lender expects and even prefers to be paid in installments is insufficient as a rule to prove fraud, I also agree. But all of this seems beside the point. The issue is whether Nguyen took the advance intending to defraud AT&T. Perhaps he was aware of Judge Queenan's view that subparagraph (C) provides a safe harbor for unpaid credit card debt. Perhaps he harbored illusions of gambling his way back to solvency, perhaps he was simply looking to stave off his other creditors, or perhaps he sincerely believed that he was capable of managing the debt and fell victim to a change in circumstances. Whichever is true is precisely the type of question that the fact-finding process is designed to answer.

Judge Queenan's holding, based as it is on his opinion in *Cox*, renders the clear intent of subparagraphs (A) and (B) of § 523(a) meaningless, and is fundamentally unfair to creditors.[3] AT&T was entitled to discovery and a fair opportunity to prove that Nguyen was not entitled to a discharge under § 523(a)(2)(A).

### ORDER

The Order of the Bankruptcy Court is *REVERSED* and the case is *REMANDED* for proceedings in the ordinary course.

SO ORDERED.

---

2. I cannot fathom what there is about Nguyen's written promise that "implied" anything about his financial condition in the sense that the term is used in subparagraph (A). What he gave was an express undertaking to repay the advance which he may or may not have intended to keep.

3. While I sympathize with Judge Queenan's effort to fashion a rule permitting the expedient resolution of the crush of bankruptcy petitions driven by credit card debt. his solution comes at the unacceptable expense of the creditor's right to due process and in contradiction of the very statute upon which it is based.