AT & T UNIVERSAL CARD SERVICES CORP., Appellant,

v.

Fariba A. PAKDAMAN aka Fariba A. Azad and Mehrdad Valikhani, Appellees.

Civil Action No. 96–30076–MAP.

United States District Court, D. Massachusetts.

July 17, 1997.

Peter M. Stern, Law Office of Peter M. Stern, Springfield, MA, for Appellees.

Mark Lindner, Law Office of Mark Lindner, Needham, MA, for Appellant.

Joseph B. Collins, Hendel, Collins & Newton, Springfield, MA, Chapter 7 Trustee.

## MEMORANDUM REGARDING APPEAL FROM UNITED STATES BANKRUPTCY COURT

PONSOR, District Judge.

### I. INTRODUCTION

The appellant, AT & T Universal Card Services Corp. ("AT & T"), has filed this appeal from an order dated March 27, 1996 of the bankruptcy court dismissing *sua sponte* its complaint objecting to the discharge of the debtors. The bankruptcy judge took this action at a pretrial conference, prior to any discovery, on the authority of *The GM Card v. Cox*, 182 B.R. 626 (Bankr. D.Mass.1995). For the reasons set forth below, the order of the bankruptcy court will be reversed and the case remanded to permit the completion of discovery and further proceedings.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Since the bankruptcy court's dismissal of the adversary proceeding foreclosed any discovery, the facts in this case are rather sketchy. However, even the limited facts that do exist are telling.

On October 17, 1995, when the debtors filed their Chapter 7 petition, they listed over $257,000 in credit card debt, including $15,000 owed to AT & T. The debtors incurred a substantial portion of this balance on two accounts opened four months earlier, in June 1995. These two accounts were "maxed out" roughly three months prior to the filing of the bankruptcy petition through large cash advances and foreign charges.

On January 24, 1996, AT & T filed an adversary proceeding objecting to the discharge of the $15,000 in debt owed to it, on the ground that the debt was non-dischargeable under 11 U.S.C. § 523(a)(2)(A). This statute states that "a debt obtained by false pretenses, or false representation, or actual fraud ... " is not dischargeable.

In *Cox*, Bankruptcy Judge Queenan concluded that § 523(a)(2)(A) "encompasses neither 'loading up' charges nor implied misrepresentation of intent to pay when both the representation and the absence of intent to pay must be based upon inference." 182 B.R. at 636. In effect, *Cox* held that under *no* circumstance could a credit card holder's debt be found non-dischargeable based upon the provisions of subparagraph (A).

Relying upon this authority, Bankruptcy Judge Boroff dismissed AT & T's adversary complaint on his own motion at the pretrial conference. While recognizing that the application of traditional elements of misrepresentation to the credit card area is tricky, this court must conclude that *Cox* strikes the balance too harshly against the creditor. The order of dismissal must therefore be reversed.

## III. DISCUSSION

Jurisdiction to hear an appeal from an order of the United States Bankruptcy Court is provided in 28 U.S.C. § 158(a). Since the bankruptcy judge ruled as a matter of law, the standard of review in this case is *de novo*. *LaRoche v. Amoskeag Bank (In Re LaRoche)*, 969 F.2d 1299, 1301 (1st Cir.1992).

The policy underlying the bankruptcy statute is to permit an "honest but unfortunate debtor" to obtain a fresh start while insuring that a dishonest debtor does not benefit from his wrongdoing. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). To insure a proper balance between the rights of the unfortunate debtor and the rights of the creditor victimized by a dishonest one, the bankruptcy code provides that certain debts are non-dischargeable, including those obtained through false pretenses.

Many courts have recognized that credit card debt presents a unique problem of dischargeability, because of the difficulty in providing proof of misrepresentation. *See, e.g., First Nat'l Bank v. Roddenberry*, 701 F.2d 927, 931 (11th Cir.1983); *Citibank, South Dakota, N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653, 655–56 (9th Cir.BAP 1988). Normally, credit transactions occur directly between the debtor and creditor. Credit card transactions, however, pull in a third party, the merchant, who honors the credit card. Thus, a creditor, who may never see the debtor, faces particular problems in proving elements of misrepresentation and reliance.

In *In re Eashai*, 87 F.3d 1082 (9th Cir. 1996), the Court of Appeals discussed the various ways courts have addressed issues of dischargeability in the credit card context. Three approaches seem to have emerged. First, what *Eashai* called the "majority approach" is the "implied misrepresentation" theory. Under this theory, courts will presume that a credit card holder "impliedly represents, upon using the credit card, that he has the ability and intention to pay for the goods or services." *Id.* at 1087. Thus, "the issuer's extension of credit constitutes both actual reliance and damages. Hence, in most credit card cases ... the user easily demonstrates the elements of representation, actual reliance and damage." *In Re Carrier*, 181 B.R. 742, 747 (Bankr.S.D.N.Y.1995).

The second or "minority" approach is the "assumption of the risk" theory, typified by *First Nat'l Bank v. Roddenberry,* 701 F.2d 927, 932–33 (11th Cir.1983). Under this theory courts will presume that the credit card company (at least until it revokes the credit card) has assumed the risk that debtors who have no ability, or no intent, to pay will use the card. Thus, only charges made after a card has been revoked, or specific sorts of charges made within sixty days of filing of the bankruptcy petition as described in § 523(a)(2)(C), will be non-dischargeable.

The first line of cases may be loosely described as pro-creditor, the second as pro-debtor.

These different tacks present contrasting visions of the credit card landscape. The first emphasizes both the need to give creditors some protection against the depredations of credit card abusers and a reluctance to give these abusers *carte blanche,* so to speak, simply to take money or property with no intention ever to pay for it. The second emphasizes a reluctance to allow credit card companies to drench the public with credit cards, charge high rates of interest to protect themselves from loss when the cards are used imprudently or mendaciously, and then badger debtors with claims of misrepresentation when they inevitably find themselves forced to invoke the protection of the bankruptcy statute.

A third approach attempts to strike a balance between these two perspectives by using the so-called "totality of the circumstances" analysis, adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In Re Dougherty,* 84 B.R. 653 (9th Cir.BAP 1988), and approved in *In re Eashai,* 87 F.3d at 1088. This approach directs courts to twelve factors, to be weighed in determining dischargeability:

(1) the length of time between the charges made and the filing of the bankruptcy;

(2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

(3) the number of charges made;

(4) the amount of charges;

(5) the financial condition of the debtor at the time the charges were made;

(6) whether the charges were above the credit limit of the account;

(7) whether the debtor made multiple charges on the same day;

(8) whether or not the debtor was employed;

(9) debtor's prospects for employment;

(10) the financial sophistication of the debtor;

(11) whether there was a sudden change in the debtor's buying habits, and

(12) whether the purchases were made for luxuries or necessities.

87 F.3d at 1087–88.

As noted, the case relied upon by the bankruptcy judge here, *In re Cox,* 182 B.R. 626 (Bankr.D.Mass.1995), holds flatly that 523(a)(2)(A) cannot, as a matter of law, be used by creditors attempting to demonstrate misrepresentation of intent to pay "when both the misrepresentation and the absence of intent to pay must be based upon inference." *Id.* at 636.

The *Cox* decision arose from a debtor's motion to dismiss, which the bankruptcy judge treated as a motion for summary judgment because it was both supported and opposed by a number of affidavits. As a result, unlike the case now before this court, the *Cox* record permitted a fairly extensive recitation of facts—most of which, in nuance if not in substance, favored the debtors. Thus, for example, the total amount of debt involved was relatively small ($3547,51), the debtors had made attempts to keep payments current, and the debtors' financial trouble had a sympathetic explanation, the illness of their infant daughter. 182 B.R. at 628.

Despite this, recognizing that the summary judgment standard requires a view of the facts in the light most favorable to the non-moving party, the bankruptcy judge assumed for purposes of the motion that the debtor did not intend to pay for the cash advances and that "he impliedly represented he did intend to pay by signing the charge slip for the advances." *Id.,* at 629.

Even accepting these facts, the bankruptcy court concluded, as a matter of law, that a "misrepresentation of intent to pay which must be inferred solely from the circumstance" was not actionable under § 523(a)(2)(A)— that is, that such a misrepresentation could not constitute "false pretenses, a false representation or actual fraud...."

In reaching this conclusion the judge noted, first, that an implied misrepresentation regarding a debtor's *ability* to pay was outside the reach of the statute. Congress had amended the statute to protect consumers from sharp practices by certain lenders, who would distribute truncated credit application forms with small spaces to disclose pre-existing debt, and then claim misrepresentation of ability to pay when it was later revealed that a bankrupt debtor had not squeezed in every single item of pre-existing debt onto the tiny lines provided on the short-form application. *See,* legislative history cited at 182 B.R. at 631.

Although the judge recognized that ability to pay and intent to pay were not the same, he considered them to be "inextricably linked" because lack of intent to pay "is typically based primarily upon the debtor's lack of ability to pay." *Id,* at 630. After noting the *Roddenberry* decision (which, as noted above, held that card issuers assumed the risk of all credit abuse occurring before the card was revoked) the bankruptcy court concluded that the statutory amendments restricting claims by creditors of misrepresentations regarding *ability* to pay "seem inconsistent" with any Congressional intent to permit denial of a discharge based upon an implied misrepresentation of *intent* to pay.

With respect, this court simply cannot see the inconsistency. The unscrupulous tactics of certain lenders justified the amendment to the statute to bar creditors' attempts to block a discharge by citing alleged misrepresentations by a debtor regarding his or her *ability* to pay. While it is true that ability to pay might, in some circumstances, be a factor to be considered in determining intent, Congress' action in amending the statute cannot fairly be construed as in any way offering protection to a credit card user who obtains

money by flatly misrepresenting his or her *intent* ever to pay it back.

In addition, this court disagrees with the conclusion that lack of ability to pay and lack of intent to pay are necessarily as entwined as the *Cox* decision suggests. A debtor's ability to repay at the time he or she incurs indebtedness may of course be circumstantial evidence on the issue of intent, but i; is only one factor. It is well established that financial inability alone "does not establish fraudulent intent." *Colonial National Bank USA v. Marc Leventhal (In re Leventhal),* 194 B.R. 26 (Bankr.S.D.N.Y.1996), citing *Chase Manhattan Bank v. Murphy (In Re Murphy),* 190 B.R. 327, 332 n. 6 (Bankr.N.D.Ill. 1995). It's not hard to conceive of situations—credit card kiting schemes, for example—where basic ability to repay at the time debt was incurred could be shown, but where lack of *intent* to repay could as easily be found. The two concepts are separate, logically and, often practically as well.

Moreover, while this court is sympathetic to the plight of some debtors, who may find the cost of responding to a creditor's discovery requests on the issue of intent burdensome, this imbalance in resources, which courts and litigants face in many contexts, cannot justify total denial of a creditor's discovery in all cases, as the *Cox* decision suggests. *Id.,* 182 B.R. at 634. Courts retain the power, in these as in all cases, to curb discovery abuse. In the same way, the fact that findings regarding intent may be "uncertain at best" and that assessing the issue is a "difficult process," *Id.* at 635, cannot justify a construction of § 523(a)(2)(A) that is unfair to legitimately injured creditors and that amounts almost to an invitation to commit fraud to borrowers.

Finally, the suggestion that subsection (C) is the exclusive remedy for credit card abuse is both unsupported by any legislative history and contrary to good policy. This section protects creditors only where charges are made during the sixty days prior to the debtor's filing the bankruptcy petition. As the Ninth Circuit noted in *Eashai,* "by using a credit card kiting scheme, a clever debtor can avoid [subsection (C)'s] presumption by

**890**

manipulating the timing of his fraudulent transactions." 87 F.3d at 1092.

As an alternate basis for his conclusion, the bankruptcy judge held that the creditor in *Cox,* as a matter of law, did not reasonably rely upon any implied misrepresentation of the debtor. *Id,* at 636. In reaching this conclusion the court relied, initially, on its assessment of the facts in that case, supplied by affidavits. Here, no such assessment occurred, since the case was dismissed at the pretrial conference, without discovery, on the judge's own motion.

Moving away from the specific facts of the case, the bankruptcy judge in *Cox* determined that the mechanics of a credit card transaction in themselves always forestall any claim by a creditor asserting its reliance on any implied representation that the charging party will pay. As the judge conceded, numerous decisions hold to the contrary. 182 B.R. at 637. In this court's view, these other decisions speak with more power. *Leventhal* correctly states that the issuer's extension of credit constitutes both actual reliance and damages. As that court noted, "common experience comports with these implications, but in particular cases they may not be supported by the facts." 194 B.R. at 30.

Beyond this, the judge's conclusion in *Cox* regarding the issue of creditor reliance is substantially weakened by *Field v. Mans,* — U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), handed down by the Supreme Court subsequent to *Cox.* This decision held that the fraud exception to discharge set out in § 523(a)(2)(A) requires merely "justifiable," not reasonable, reliance on the part of the creditor. The level of reliance inferable on the facts set out in the creditor's complaint in this case is certainly sufficient to satisfy this lower threshold in the context of a motion to dismiss.

Although *Cox* explicitly declined to adopt the "assumption of the risk" line of cases on this issue, it nevertheless threw up insurmountable hurdles for creditors victimized by even the most egregious credit card abuse. Thus, as noted, AT & T was not even given an opportunity to take discovery in order to buttress its claim of fraud, despite the fact that the debtor had racked up over a quarter of a million dollars in credit card debt. Common sense calculations made by AT & T's attorney, based on the limited information available, reasonably suggested that minimum contract payments on this amount of credit card debt would exceed debtor's income outright, assuming he spent *nothing* on living expenses.

Finally, Judge Stearns has recently disapproved *Cox* in a decision on the same issue. *AT & T Universal Card Service Corp. v. Nguyen,* 208 B.R. 258 (D.Mass.1997). As in *Nguyen,* this court must conclude that, at a minimum, AT & T was entitled to discovery and a fair opportunity to prove that the debtor here was not entitled to a discharge under § 523(a)(2)(A). Following discovery, the *Eashai* and *Leventhal* decisions provide examples of the sort of analysis the court might use in determining whether AT & T can present sufficient facts to survive summary judgment or prevail on the merits.

## IV. CONCLUSION

For the forgoing reasons, the order of the Bankruptcy Court is hereby reversed and the case is remanded for proceedings consistent with this opinion.