**BANK OF AMERICA, Plaintiff–Appellant,**

v.

**Mark E. JARCZYK, Defendant–Appellee.**

No. 00–cv–910–A.
Bankruptcy No. 98–1240B.

United States District Court,
W.D. New York.

Sept. 20, 2001.

Robert S. Cooper, Esq., Rochester, New York, for appellant.

Jeffrey Freedman, Esq., Buffalo, New York, Kenneth R. Hiller, Esq., Amherst, New York, for appellee.

## DECISION AND ORDER

ARCARA, District Judge.

### *INTRODUCTION*

Plaintiff–Appellant Bank of America ("Bank") brought an adversary proceeding against Defendant–Appellee Mark E. Jarczyk ("Jarczyk"), seeking to hold Jarczyk's credit card debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). The bankruptcy court granted summary judgment in favor of Jarczyk, finding that the Bank was unable to establish several elements of its claim. The Bank appeals from that order. For the reasons stated herein, the bankruptcy court's entry of summary judgment is reversed and the case is remanded to the bankruptcy court for further proceedings.

### *BACKGROUND*

In October 1997, a telemarketer solicited Jarczyk on behalf of the Bank to open a credit card account with the Bank. The Bank alleges that prior to making the offer to open a credit card account, it conducted an investigation of Jarczyk including Jarczyk's existing credit card accounts, the years employed at his current employment, his home ownership, credit rating, and any applicable income. At the time of the offer, Jarczyk was solvent and, according to the Bank, no "red flags" were uncovered in the credit investigation. Accordingly, the Bank opened a "business card line" in Jarczyk's name, with a $7,500 credit limit and a $3,750 cash advance limit.

Between October 21, 1997 and January 13, 1998, Jarczyk made purchases totaling $6,302.51 and took cash advances totaling $1,313.00. Jarczyk's monthly statement on the account for November 1997 reflects that Jarczyk made purchases in the amount of $5,518.08 for that month, the largest purchase was for a snow plow in

the amount of $4,071.60.[1] Jarczyk took a cash advance of $303.00 on the account in November 1997.

Jarczyk's December 1997 monthly billing statement indicates that Jarczyk made a $200 payment on the account (minimum payment due was $146.00), but that he charged an additional $694.62 in purchases that month, and took cash advances in the amount of $625.50. The balance on the account for that month was $7,028.39.

Jarczyk's January 1998 monthly billing statement reflects that he again made a $200 payment on the account (minimum payment due was $184.00), but charged an additional $89.90 in purchases that month, and took cash advances in the amount of $343.00. The account balance in January 1998 was $7,361.20.

According to the February 1998 billing statement, Jarczyk took an additional cash advance on January 13, 1998, but did not make any further purchases or take any further cash advances. Jarczyk apparently failed to make the minimum monthly payment and the account became past due.

Jarczyk first considered filing for bankruptcy on or about March 10, 1998, after consulting with a consumer credit counseling company. *See* Interrogatory No. 14, at Ex. 7 to Record on Appeal. The following day, Jarczyk consulted an attorney regarding a bankruptcy filing. A voluntary petition in bankruptcy was filed on May 6, 1998. At the time of the bankruptcy filing, Jarczyk had a total unsecured debt of approximately $29,000. At the time of the filing, Jarczyk's monthly living expenses totaled approximately $2,893.00, and his monthly net income was approximately $2,596.00. In Schedule F of the petition Jarczyk listed, among others, an unsecured

nonpriority claim by the Bank in the amount of $7,495.00.

In August 1998, the Bank filed this adversary proceeding against Jarczyk alleging that the indebtedness of Jarczyk to the Bank is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because such debt was incurred by false pretenses, false representation or actual fraud.

The bankruptcy court permitted the Bank to conduct only limited discovery. Jarczyk then moved for summary judgment, which the Bank opposed arguing that material issues of fact existed and further discovery was required. On September 20, 2000, the bankruptcy court filed an order granting summary judgment in favor of Jarczyk ("Bankruptcy Court Order"). The bankruptcy court found that no material issues of fact existed, and that even if further discovery were conducted, the Bank would still be unable to establish several elements of its claim. The Bank then filed this appeal.

## DISCUSSION

■ This Court reviews the bankruptcy court's grant of summary judgment *de novo*, taking all factual inferences in favor of the non-moving party. *In re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir. 1998); *see also In re Porges*, 44 F.3d 159, 162 (2d Cir.1995) (bankruptcy court's conclusions of law are reviewed *de novo*). Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

---

1. In making this purchase, Jarczyk signed a sales slip with the notation: "Cardholder acknowledges receipt of goods and/or services in the amount of the [t]otal shown hereon and agrees to perform the obligations set forth in the Cardholder's agreement with the issuer."

This adversary proceeding seeks to declare Jarczyk's debt to the Bank nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code. Section 523(a)(2)(A) provides that any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is not dischargeable in bankruptcy. 11 U.S.C. § 523(A)(2)(A).

■ At the outset, it should be noted that exceptions to discharge under the Bankruptcy Code are narrowly construed against the creditor so as to fulfill bankruptcy's goal of giving the debtor a fresh start. *Community Mutual Savings Bank v. Landrin (In re Landrin)*, 173 B.R. 307, 309 (Bankr.S.D.N.Y.1994).

■ The Second Circuit has not yet addressed the applicability of § 523(a)(2)(A) in the context of credit card debt. Most courts that have addressed the issue, including the bankruptcy court in this case, have concluded that a creditor seeking to have a debt declared nondischargeable under § 523(a)(2)(A) must prove by a preponderance of evidence: (1) that the debtor made a representation; (2) knowing it was false; (3) with the intent to deceive the creditor; (4) upon which the creditor actually and justifiably relied; and (5) that the creditor sustained a loss as a proximate result of its reliance upon the statement. *See* Bankruptcy Court Order, at 7; *see also AT & T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir.2001); *Rembert v. AT & T Universal Card Services (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998); *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (8th Cir. BAP 2000); *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1284 (9th Cir.1996).

### 1. *Jarczyk Made a Representation*

As the bankruptcy court noted, courts have struggled to apply the above traditional elements of fraud in the context of credit card debt because, at the time the credit card debt is incurred, there is ordinarily no express representation by the debtor to the credit card issuer. Rather, in a typical credit card transaction, the debtor simply presents the credit card to the merchant, who obtains approval for the transaction from the credit card issuer. The cardholder and the card issuer have no personal contact at the time of the transaction.

Courts have developed various different approaches in their attempt to deal with the unique issues arising in § 523(a) actions involving credit card debt. By far, the majority of courts have adopted what is sometimes termed the "implied representation" theory, which holds that each time a cardholder uses his credit card, he impliedly represents to the issuing bank that he intends to repay the debt incurred. *See In re Mercer*, 246 F.3d at 402–07. This approach has been adopted by the Fifth, Sixth and Ninth Circuits, as well as numerous bankruptcy courts in the Second Circuit. *See e.g. In re Mercer*, 246 F.3d at 402–07 (use of a credit card is accompanied by an implied representation of an intent to repay the debt); *In re Rembert*, 141 F.3d at 281 (same); *In re Anastas*, 94 F.3d at 1285 (same); *MBNA America v. Parkhurst (In re Parkhurst)*, 202 B.R. 816 (Bankr.N.D.N.Y.1996) (same); *Colonial Nat'l Bank USA v. Leventhal (In re Leventhal)*, 194 B.R. 26 (Bankr.S.D.N.Y.1996) (same).

This theory is derived from the common law notion that a misrepresentation need not be spoken, but can be implied through conduct. *In re Mercer*, 246 F.3d at 406–07 (citing Restatement (Second) of Torts, § 525 cmt. b). It also draws upon common

law principles of contract law and interprets each credit card transaction as a unilateral contract in which the cardholder unilaterally promises to repay the debt being incurred, in accordance with the terms set forth in the credit card agreement, in exchange for the issuing bank's performance (i.e. reimbursing the merchant for the goods). *See AT & T Universal Card Services Corp. v. Dietzel (In re Dietzel)*, 245 B.R. 747, 753, n. 8 (Bankr. D.Mass.2000) (discussing concept of unilateral contract as applied to credit card transactions); *see also* Corbin on Contracts, Rev. Ed., § 2.33 (describing the "typical credit card" transaction as an "offer by the issuer to a series of unilateral contracts.").

The bankruptcy court considered but rejected the implied representation theory. According to the bankruptcy court, the use of a credit card "suggests only a representation that the user possesses good credit sufficient to allow either the advance of funds or the purchase of goods or services." Bankruptcy Court Order, at 9. It says nothing of the user's intent to pay. *Id.* The bankruptcy court determined that representations about the intent (or ability) to pay are made, if at all, at the time that a credit card application is made. *Id.* at 10.

Underlying the bankruptcy court's analysis appears to be the notion that issuance of the credit card forms a contract between the credit card issuer and the cardholder. Therefore, in the bankruptcy court's view, representations as to performance on the contract were made, if at all, at the time the card was issued and the contract was formed.

■ However, the mere issuance of a credit card does not create a binding contract between the card issuer and the cardholder. Instead, the issuance of a credit card is simply an *offer* to a series of unilateral contracts. Until that offer is accepted by the cardholder, by using his credit card, no contract has been formed. As explained in one learned treatise:

> The issuance of a credit card is but one offer to extend a line of open account credit. It is unilateral and supported by no consideration. The offer may be withdrawn at any time, without prior notice, for any reason, or, indeed, for no reason at all, and its withdrawal breaches no duty—for there is no duty to continue it -and violates no rights. Acceptance or use of the card by the offeree makes a contract between the parties according to the terms . . . .

*Id.* at § 2.33 (quoting *City Stores v. Henderson*, 116 Ga.App. 114, 156 S.E.2d 818 (1967)). Because it is the *use* of the credit card, and not the *issuance*, that creates an enforceable contract, each time a cardholder uses his credit card, he accepts the offer by tendering his promise to perform (i.e. to repay the debt upon the terms set forth in the credit card agreement). *See* Corbin on Contracts, Revised Ed., § 1.23 (promisor to a unilateral contract can either be an offeror or an offeree).

It follows then, that if the cardholder accepts the offer—by using the card—with no intent to repay the debt, he has committed fraud. *See* Restatement (Second) of Torts, § 530, cmt. c ("The intention to perform the agreement may be expressed but it is normally merely to be implied from the making of the agreement. Since a promise necessarily carries with it the implied assertion of an intention to perform[,] it follows that a promise made without such intention is fraudulent and actionable in deceit . . . ."). Accordingly, this Court agrees with the prevailing majority view that a representation of intent to pay is made upon card *use*, not upon

card *issuance.* *See In re Mercer,* 246 F.3d at 404.

## 2. *False Representation made with the Intent to Deceive*

Having determined that a representation was made, the next inquiry focuses on whether Jarczyk made the representation knowing that it was false, and with the intent to deceive the Bank.

■ Because the bankruptcy court found that no representation was made, it did not address the issue of whether Jarczyk's representation of intent to pay was false when made, and whether it was made with the intent to deceive the Bank. Most courts considering these elements have concluded that a subjective test is appropriate in determining whether these elements are met. That is, the focus is on Jarczyk's subjective state of mind at the time the representation was made, and not on whether that representation was objectively reasonable. *See Chase Manhattan Bank v. Murphy (In re Murphy),* 190 B.R. 327, 332–33 (Bankr.N.D.Ill.1995). Thus, to prevail on its claim against Jarczyk, the Bank must prove that at the time of credit card use, Jarczyk knew that he did not intend to repay the debt.

■ It is important to note the distinction between intent to repay and ability to repay. Although, as discussed, the Court believes that credit card usage carries with it an implied representation of intent to repay the debt, it does not also carry an implied representation of ability to repay. Indeed, such an implication is contrary to the notion of credit. As one court observed: "[o]ne of the principal reasons people rely on credit is a present lack of ability to pay." *Id.* at 332. Thus, the fact that Jarczyk lacked the ability to repay the debt at the time he used his credit card is not *per se* evidence of his intent to deceive.[2]

■ On the other hand, a complete lack of ability to repay is one factor that may be considered in determining the debtor's subjective state of mind at the time of credit card usage. This factor alone cannot and should not be the sole basis for determining fraudulent intent. *See In re Mercer,* 246 F.3d at 408; *AT & T Universal Card Services Corp. v. Pakdaman,* 210 B.R. 886, 889 (D.Mass.1997) ("It is well established that financial inability alone does not establish fraudulent intent.") (internal quotation omitted). Other factors useful in determining the debtor's subjective intent include, but are not limited to: the time between card use and the bankruptcy filing; whether an attorney was consulted about bankruptcy prior to card use; the number of charges and their amount; whether multiple charges were made in one day or whether the debtor's buying habits suddenly changed; whether the debtor was employed and/or his employment prospects; and whether luxuries or necessities were purchased. *See Citibank S.D., N.A. v. Dougherty (In re Dougherty),* 84 B.R. 653, 657 (9th Cir. BAP 1988) (listing factors); *American Express Travel Related Services, Co., v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1126 and n. 2 (9th Cir.), *cert. denied,* 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997) (same). The list is not exhaustive, and none of the above factors are dispositive of intent. They simply suggest the types of evidence a court may consider in determining whether, under all of the

---

2. Furthermore, even if such a representation were inferred, it would not be actionable under § 523(a)(2)(A). *See* 11 U.S.C. § 523(a)(2)(A) (providing for nondischarge-ability of debts obtained by false pretenses, false representation, or actual fraud, "other than a statement respecting the debtor's or an insider's financial condition").

circumstances, it appears that Jarczyk had the subjective intent not to repay the debt at the time he used the credit card. *See In re Murphy,* 190 B.R. at 334 ("What courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent.").

█ Based upon the facts ascertained thus far, there does not appear to be any evidence suggesting that Jarczyk acted with fraudulent intent. However, the Bank argues that summary judgment is premature because it has not yet had an opportunity to conduct discovery on the issue of whether Jarczyk's representation of intent to pay was false when made. The bankruptcy court initially limited the Bank's discovery demands to interrogatories and requests for admission, and the Bank did not have an opportunity to conduct a deposition of Jarczyk prior to summary judgment being entered in Jarczyk's favor. The Bank also claims that Jarczyk's interrogatory responses are incomplete. The Bank is entitled to discovery and a fair opportunity to prove its case. *See Pakdaman,* 210 B.R. at 890; *AT & T Universal Card Service Corp., v. Nguyen,* 208 B.R. 258 (D.Mass.1997). This Court shares the bankruptcy court's concern over irresponsible lending practices utilized by many credit card companies, and over the danger of permitting credit card companies to institute nondischargeability actions in an attempt to coerce a debtor with limited financial resources into settling the debt rather than incur even greater legal expenses defending the action. However,

with regard to the latter concern, the Court notes that § 523(d) permits a debtor to recover costs and attorney's fees in the event that the creditor is ultimately unsuccessful.[3] The bankruptcy court also has authority to curb discovery abuses. *In re Pakdaman,* 210 B.R. at 889.

### 3. *Justifiable Reliance and Loss to Creditor*

As to the fourth and fifth elements, the Bank must show that it actually and justifiably relied on Jarczyk's alleged misrepresentation, and that as a result, it suffered a loss. *See Field v. Mans,* 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (applying common law standard of justifiable reliance to action alleging "actual fraud" under § 523(a)(2)(A) of the Bankruptcy Code); *see also* Restatement (Second) of Torts, § 537.

█ *Actual reliance* is established if a credit card issuer in fact relied on the debtor's promise to repay the debt. That is, the debtor's use of the credit card, and his accompanying implied representation of intent to repay, must have been a "substantial factor" in bringing about the credit card company's loss. Restatement (Second) of Torts, § 537, cmt. a; *In re Mercer,* 246 F.3d at 413.

In this case, the Bankruptcy Judge concluded that the Bank could not establish reliance because "[t]he primary decision to extend credit is made upon the issuance, before any implied representation." Bankruptcy Court Order, at 16. Although the initial decision to offer a line of credit

---

**3.** Section 523(d) provides that if the debt is ultimately discharged, the court shall enter judgment in favor of the debtor for costs and reasonable attorney's fees, unless it finds that the creditor's position was substantially justified. *See* 11 U.S.C. § 523(d); *see also AT & T Universal Card Services Corp. v. Williams,* 224 B.R. 523 (2d Cir. BAP 1998) (affirming bank-

ruptcy court's award of attorney's fees upon finding that creditor's position was not substantially justified); *AT & T Universal Card Services Corp. v. Arroyo,* 205 B.R. 984 (Bankr. S.D.Fla.1997) (awarding attorney's fees to debtor upon finding that creditor's position was not substantially justified).

is ordinarily made after an investigation into one's creditworthiness, such an initial investigation does not automatically preclude liability.

> It is not enough to relieve the maker of a fraudulent misrepresentation from liability that the person to whom it is made makes an investigation of its truth. It is only when he relies upon his investigation and does not rely upon the false statement that he cannot recover.

Restatement (Second) of Torts, § 547, cmt. a. Thus, for example, when a decision to extend credit is based in part on an independent investigation of the debtor's financial status, and in part on the fraudulent statement made by the debtor, the debtor may still be liable for the fraudulent statement. *See id.,* cmt. a, illustration 3. As long as the representation has "played a substantial part" in influencing the decision to extend credit, actual reliance is established. *Id.* at § 546, cmt. b.

▮ For the reasons discussed above, the Court has determined that the use of a credit card by Jarczyk carries with it an implied representation of an intent to repay the debt. As such, a credit issuer will ordinarily have little difficulty establishing actual reliance since it is the debtor's use of the credit card that prompts the issuer to extend credit, and thereby results in loss to the issuer when the debt is not repaid. Conversely, absent debtor's use of the credit card, there would be no extension of credit, and no resulting loss to the issuer.[4]

▮ In addition to *actual reliance,* the Bank must also establish *justifiable reliance.* That is, the Bank must show that it was justified in relying on Jarczyk's representation that he intended to repay the debt. The Restatement (Second) of Torts provides:

> *Justifiable Reliance.* In order for reliance upon a statement of intention to be justifiable, the recipient of the statement must be justified in his expectation that the intention will be carried out. If he knows facts that will make it impossible for the maker to do so, he cannot be justified in his reliance.

Restatement (Second) of Torts, § 544(c). Thus, for example, if the Bank's initial investigation of Jarczyk revealed that Jarczyk was in default on numerous existing credit card accounts, it would be difficult to find that the Bank was justified in relying on Jarczyk's implied representation of intent to repay the debt. *See also id.,* § 541 ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.").

▮ Applying these common law principles to credit card debt, the Fifth and Ninth Circuits have concluded that a credit card issuer's reliance on a debtor's representation of intent to repay is justifiable if "the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable." *In re Mercer,* 246 F.3d at 421; *In re Anastas,* 94 F.3d at 1286.[5] This rule is consistent with com-

---

**4.** Again, it is the *actual extension of credit* that causes loss to the issuer if the debt is not repaid, not the issuer's *offer to extend credit* upon the terms set forth in the credit card agreement. As noted, the credit card agreement is merely "the offer of an act for a promise." *See* Corbin on Contracts, Rev. Ed., § 3.17. When the debtor accepts the offer by using the card and thereby promising to per-

form (i.e. repay the debt), the issuer's extension of credit constitutes an act in reliance on that promise.

**5.** The Sixth Circuit did not address the issue of justifiable reliance in *In re Rembert,* 141 F.3d 277 (6th Cir.1998). In *In re Ward,* 857 F.2d 1082 (6th Cir.1988), the Sixth Circuit held that the "lender must investigate credit-

mon law principles of justifiable reliance. However, the question of whether reliance is justifiable is ultimately a question of fact for the bankruptcy court, *In re Mercer*, 246 F.3d at 423, and also depends on the subjective qualities of the credit card issuer and the circumstances of the particular case.

## CONCLUSION

Accordingly, for the reasons stated herein, the bankruptcy court's entry of summary judgment in favor of Jarczyk is reversed, and this matter is remanded to the bankruptcy court for further proceedings consistent with this decision. The Clerk of the Court is directed to take all steps necessary to close this appeal.

IT IS SO ORDERED.

worthiness and ferret out ordinary credit information" as a precondition to preventing discharge under § 523. *Id.* at 1086. However, the Sixth Circuit's holding requiring a creditor to conduct an investigation of the debtor's creditworthiness is somewhat at odds with the Supreme Court's holding in *Field*, 516 U.S. at 70, 116 S.Ct. 437, indicating that reliance is justifiable even if the relying party could have ascertained the falsity had he made an investigation.