**In re Edward GIUFFRIDA and Jill Giuffrida, Debtors.**

**Chase Manhattan Bank, USA, N.A., Plaintiff,**

**v.**

**Edward Giuffrida, Defendant.**

**Bankruptcy No. 800–85330–511.
Adversary No. 800–8423–511.**

United States Bankruptcy Court, E.D. New York.

March 25, 2003.

Weinstein Manley Riley Therriault & Singer, P.S., by Neil I. Kilstein, New York City, for Chase Manhattan Bank, USA, N.A.

Pinks, Arbeit, Lewis & Nemeth, by Steven G. Pinks, Hauppauge, NY, for Debtor.

## MEMORANDUM DECISION AND ORDER (Re: Defendant's Motion to Dismiss and for Summary Judgment)

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

Before the Court is a motion by the Defendant (a) to dismiss the above-captioned adversary proceeding complaint for failure to state a claim upon which relief can be granted, and (b) for summary judgment dismissing the complaint on the ground that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. For the reasons that follow, the Defendant's motion to dismiss is granted, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(c), without prejudice to the Plaintiff's filing an amended complaint within twenty (20) days of the date of entry of this Memorandum Decision and Order. The motion for summary judgment is denied without prejudice to renew after the Complaint has been re-pleaded and appropriate discovery (if any is required) is completed.

### INTRODUCTION

On August 10, 2000, Edward Giuffrida (the "Debtor") filed a joint voluntary Chapter 7 petition together with his wife, Linda Giuffrida.

On November 3, 2000, Chase Manhattan Bank, USA, N.A. ("Chase") filed a timely complaint seeking to have $6,000 of its $9,200 claim against the Debtor declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (the "Complaint"). The Complaint alleges that:

- "Plaintiffs are a creditors [sic] of Defendant by virtue of their having issued a credit lines [sic] to Defendant as follows 4305–8703–8385–4023. The outstanding balance is currently $9,200;" (¶ 6)

- "By obtaining the Account, Defendant represented that Defendant would repay all amounts utilized in accordance with the terms and conditions set forth in the loan agreement;" (¶ 7)

- "Each and every time Defendant used the credit line available in the Account, Defendant represented that Defendant had the ability and intent to repay the credit, which was advanced by Plaintiffs;" (¶ 8)

- "The Defendant made such representations with the intention and purpose of deceiving Plaintiffs into extending and continuing to extend the credit line;" (¶ 9)

- "Upon information and belief, it appears that the Defendant took cash advances in excess of $6,000.00 in March 2000, exceeded his credit limit and made payments of less than $150.00 to reduce the indebtedness;" (¶ 10)

- "At the time of each and every action complained of in Paragraph 10, above, Defendant knew or should have known of this inability to repay, or incurred the debt with reckless disregard as the belief that Defendant could repay the debt to Plaintiffs;"(¶ 11)

- "Defendant was already insolvent at the time of the cash advances and purchases, and did not have the present ability or realistic future possibility to repay the debt;" (¶ 12)
- "Defendant therefore had a specific intent to defraud Plaintiffs by accepting the benefits of the Credit line without ever intending to repay same;" (¶ 13)
- "Defendant's actions constitute material misrepresentations of fact which were intended to be relied upon by Plaintiffs in extending credit to the Defendant;" (¶ 14)
- "Plaintiffs, in fact, did justifiably rely upon Defendant's misrepresentations of repayment and was induced to lend money and/or extend credit to Defendant by said misrepresentations;" (¶ 15)
- "As a result of Defendant's actions, which amount to actual fraud, Plaintiffs have thereby sustained a loss; to wit, that Plaintiffs were defrauded into continuing to extend credit to the Defendant and forbearing collections efforts, such that Plaintiffs sustained a total loss of $6,000 plus interest accrued up to the present;" (¶ 16) and
- "By Defendant's actions, Defendant obtained money and/or extension of credit from Plaintiff through false pretenses, false representations and/or actual fraud;" (¶ 18).

On November 21, 2000, the Debtor filed an Answer denying the allegations of the Complaint and demanding judgment dismissing the Complaint. Thereafter, the Debtor filed the instant motion to dismiss and for summary judgment (the "Motion"). The Debtor contends that Chase's claim fails because it relies solely upon the theory that by obtaining cash advances, the Debtor made an implied representation of his intent to repay the debt. In support of his motion, the Debtor observes that the parties stipulated that the Debtor made no express representations; thus, the sole basis for Chase's claim rests upon the implied representation arising from his use of the credit card. He further cites several cases for the proposition that by using a multi-purpose credit card, a debtor does not make an implied representation of his intent to repay the debt created by such use. *See, e.g., In re Jarczyk*, 253 B.R. 140 (Bankr.W.D.N.Y.2000); *In re Baumblit*, 229 B.R. 50 (Bankr.E.D.N.Y.1999); and *In re Cacciatore*, 209 B.R. 609 (Bankr. E.D.N.Y.), *rev'd*, 1998 WL 412644 (E.D.N.Y.1998). The Debtor also argues that the Complaint fails to sufficiently plead Chase's cause of action for fraud. *See* FRCP 9(b).

Chase opposes the Motion. In its Memorandum of Law in Opposition ("Opposition"), Chase refers to allegations outside the pleadings and avers that the Debtor "appears to have been involved in a credit card kiting scheme involving at least twelve credit cards and nine separate issuers." (Opposition at 1). On the law, Chase argues that a "majority of courts hold that when credit card holders use credit cards to obtain goods and services or cash advances, they are making a representation they intend to pay for the use." (Opposition at 3). Chase also argues that under the "implied representation" theory, it is not necessary for a debtor to make any affirmative statement of his intent to repay the debt; rather, Chase contends that the intent to defraud should be determined from the totality of the circumstances. (Opposition at 4). Lastly, Chase argues that "just comparing the debtor's income of $1,811.30 and monthly expenses of $3,709 (set forth in Schedules I and J) before giving consideration to servicing his enormous and growing credit card debt of

$108,637.00 (set forth in Schedule F) and unpaid sales taxes of $16,300.00 (Schedule E), it can be fairly inferred that the debtor did not intend to pay for the cash advance that is the subject of this action." (Opposition at 3).

After this matter was fully submitted, Chase filed a supplemental "Declaration" in which it provided the Court with certain facts which it argues show that the Debtor's schedules provide evidence of a credit card "kiting" scheme. It attaches two charts, presumably prepared by its counsel (though it does not identify the documents from which the charts were prepared or who prepared them), which allegedly show that the Debtor improperly created the appearance of a positive credit history, thereby defrauding creditors "by preventing them from cutting off or curtailing additional credit." (Declaration ¶ 3).

The Debtor objects to the Court's consideration of the facts presented in Chase's supplemental Declaration on the basis that it was not timely filed. (*See* Debtor's Reply Affirmation). On the merits, the Debtor argues that Chase's claim that the Debtor was "creating an appearance of a positive credit history is not supported by the evidence submitted" by Chase.

After the matter was submitted to the court *sub judice*, Chase filed a Supplemental Memorandum in Opposition to the Motion and brought to the Court's attention recent case law to support its reliance on the "implied representation" theory.

### DISCUSSION

■ Chase seeks to have its debt declared non-dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code. That section provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition.

The burden is on the plaintiff to establish each element of the statute by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Reisman,* 149 B.R. 31 (Bankr.S.D.N.Y.1993). To sustain a cause of action under Section 523(a)(2)(A), a creditor must establish the following:

(i) The debtor made a false representation;

(ii) At the time the representation was made, the debtor knew it was false;

(iii) The debtor made the representation with the intention of deceiving the creditor;

(iv) The creditor justifiably relied on the representation; and

(v) The creditor sustained loss or damage as the proximate consequence of the false, material misrepresentation.

*See, e.g., In re Hanna,* 163 B.R. 918, 925 (Bankr.E.D.N.Y.1994); *In re Jacone,* 156 B.R. 740, 743 (Bankr.S.D.N.Y.1993).

The instant Complaint contains many "boilerplate" allegations typical in this and other Districts. The only facts alleged in the Complaint which are specific to this particular Debtor are recitals of his account number with Chase, the amount outstanding, the amount and month of the cash advance he took, and the amount of payments that he made to reduce the debt. More specifically, the Complaint alleges that the Debtor took cash advances of more than $6,000 in March 2000 and made payments of less than $150 on the account. The balance of the Complaint is undoubt-

edly identical to hundreds of other non-dischargeability complaints which Chase files annually across the United States.

**Motion to Dismiss**

The Debtor has moved for an order dismissing the complaint for failure to state a claim upon which relief can be granted, on the ground that the Debtor "made no representation relied upon by the creditor which would justify an exception to discharge and ... because the Complaint fails to sufficiently plead Plaintiff's cause of action for fraud." (Mem. in Support of Motion, at 6). The Debtor argues that the use of his credit card is not tantamount to making a representation of intent to repay of a kind required by 11 U.S.C. § 523(a)(2) so as to except his credit card debt from discharge as one for money obtained by fraud.

When considering a motion to dismiss under Rule 12(b)(6), the Court must presume all factual allegations in the complaint to be true and view them in a light most favorable to the plaintiff.[1] *See, e.g., Paulemon v. Tobin*, 30 F.3d 307, 308–309 (2d Cir.1994). "In reviewing pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court 'must limit itself to facts stated in the complaint as exhibits or incorporated in the complaint by reference.'" *American Express Travel Related Services Co. v. Henein*, 257 B.R. 702, 705 (E.D.N.Y.2001) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.1996)). The complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Paulemon*, 30 F.3d at 308–309. However, when fraud is pleaded in a complaint, a Rule 12(b)(6) motion should be decided in light of the particularity requirements of FRCP 9(b). *See Henein*, 257 B.R. at 707. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FRCP 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

Although the Second Circuit has not yet decided this issue, a majority of courts have held that each time a credit card holder uses his credit card, he *impliedly* represents his intention to repay the debt incurred. *See, e.g., In re Mercer*, 246 F.3d 391 (5th Cir.2001); *Bank of America v. Jarczyk*, 268 B.R. 17, 21–23 (W.D.N.Y. 2001) (citing cases); *In re Truong*, 271 B.R. 738, 745 (Bankr.D.Conn.2002); *see also In re Dougherty*, 143 B.R. 23, 25 (Bankr.E.D.N.Y.1992) (Eisenberg, J.); *In re Pannell*, 27 B.R. 298, 302 (Bankr. E.D.N.Y.1983) (Goetz, J.) ("The presentation of the credit card and the signature on the credit card receipt constitutes a promise that the credit card holder will, at some future time, pay the obligation").

The Debtor cites the Court to a few decisions that he believes hold to the contrary. Among these decisions is that of the bankruptcy court in *In re Jarczyk*, 253 B.R. 140 (Bankr.W.D.N.Y.2000). As is pointed out by Chase, however, this case was later reversed on appeal. Yet, even after the reversal was noted by Chase, Debtor's counsel continued to cite the bankruptcy court's decision in *Jarczyk*

---

1. Because the Debtor answered the complaint, his motion to dismiss is technically one made under FRCP 12(c). The standards governing review by the court are nonetheless the same as those under FRCP 12(b)(6). *See King v. American Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir.2002) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.")

without recognizing its reversal. (*See* Def.'s Reply Mem.). The second major decision on which the Debtor relies is *In re Cacciatore*, 209 B.R. 609 (Bankr.E.D.N.Y.), as to which the Debtor urges that it was reversed "on other grounds" at 1998 WL 412644 (E.D.N.Y. July 21, 1998). The Court is unaware of what "other grounds" for reversal to which the Debtor refers, because the District Court in that case clearly states that "a promise to repay is invariably implied where a defendant uses a credit card." *Cacciatore*, 1998 WL 412644 at *1. The Debtor also overlooks the distinction made in *Cacciatore* between representations of an "intent" to repay and the "ability" to repay. This distinction is significant, as discussed later herein. The third case that the Debtor cites is *In re Baumblit*, 229 B.R. 50 (Bankr.E.D.N.Y. 1999), *aff'd in part, rev'd in part*, 251 B.R. 442 (E.D.N.Y.2000), *aff'd*, 15 Fed.Appx. 30 (2d Cir.2001). Like *Cacciatore*, *Baumblit* also recognizes the distinction between the intent to repay and the ability to repay. In the words of the *Baumblit* court:

> "The proposition that credit card users make an implicit representation that is significant in the context of a nondischargeability analysis as to their *ability* to pay at the time they use their cards is inconsistent with the plain language of section 523.... However, the notion of an implied representation of an intent to perform a contract (*i.e.*, to repay the credit drawn upon in the *instant* case) is consistent both with assumptions underlying an extension of credit transaction and with established tort law."

*Baumblit*, 229 B.R. at 60–61 (emphasis in original).

■ The Court agrees with *Mercer* and the District Court decisions in *Jarczyk* and *Cacciatore*, and adopts the theory that an implied representation of a person's intent to repay the debt arises upon use of a credit card. For these reasons, the Court finds that Chase's allegation that it relied on the "implied representation" of the Debtor's intent to repay is not fatal to its Complaint.

■ However, although Chase makes conclusory allegations about the Debtor's intent and his ability to repay the debt in paragraph 8, neither party focuses upon the significant distinction between these concepts. "It is important to note the distinction between intent to repay and ability to repay. Although, as discussed, the Court believes that credit card usage carried with it an implied representation of intent to repay the debt, it does not also carry an implied representation of ability to repay." *Jarczyk*, 268 B.R. at 23. Neither *Mercer* nor *Jarczyk* finds that the use of a credit card carries with it an implied representation of a debtor's *ability* to repay the debt created thereby.[2] *Id.* (noting that implied representation of intent to repay does not also imply ability to repay). Lack of ability to repay is but one factor in determining whether a debtor possesses the requisite fraudulent intent and is not implied by credit card usage. *Id.*

■ While the Court recognizes the difficulty in pleading fraud in the context of credit card non-dischargeability actions, the Court finds that the Complaint does not allege facts sufficient to show that the Debtor possessed the requisite fraudulent intent, *i.e.*, that he knew that the representation was false, and that it was made with the intent to deceive Chase. Because "few

---

2. *See also Cacciatore*, 1998 WL 412644 at *2 (the "Bankruptcy Judge correctly rejected the argument that defendant's 'objective ability to pay at the time establishes as a matter of law that Defendant's implied representation was false and that it was made with intent to deceive' ").

men will admit to a fraudulent intent, such intent must be established by circumstantial evidence." *Pannell*, 27 B.R. at 302. Thus, courts look to certain factors to determine whether a debtor possessed a fraudulent intent at the time of credit card usage. One factor is complete lack of ability to repay the debt. *Jarczyk*, 268 B.R. at 23. Other factors include "the time between card use and the bankruptcy filing; whether an attorney was consulted about bankruptcy prior to card use; the number of charges and their amount; whether multiple charges were made in one day or whether the debtor's buying habits suddenly changed; whether the debtor was employed and/or his employment prospects; and whether luxuries or necessities were purchased." *Id.* Still other factors which may be persuasive are whether the debtor was "hopelessly insolvent," if there was a sharp change in the debtor's buying habits, or if there was a change in the debtor's pattern of paying off his/her debt. *See Pannell*, 27 B.R. at 302 (citations omitted). This list is non-exhaustive and other scenarios may be used to establish fraudulent intent. *See, e.g., Truong*, 271 B.R. at 745–46; *Henein*, 257 B.R. at 706–707 (listing additional factors).

The instant Complaint, however, merely alleges that by using the credit line, the Debtor represented that he had the ability *and* the intent to repay the credit. *See* Complaint ¶ 8. Chase does not allege facts to support any indicia of intent not to repay, which is a necessary element of the fraud. Indeed, as came to light in subsequent papers, it is Chase's theory that the Debtor was engaged in a credit card kiting scheme. Although available to Chase at the time of filing the Complaint, none of these facts were alleged in the Complaint.[3]

In support of his Motion, the Debtor also relies upon *Henein* for the notion that Chase failed to plead fraud with the particularity required by FRCP 9(b). *See* 257 B.R. 702 (E.D.N.Y.2001). In *Henein*, there was a complaint that sought a declaration of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) by alleging the following:

1.  That $80,235 of the debtor's general unsecured debt was credit card debt;
2.  That the debtor earned $16,780 and $19,600 in the two years preceding the bankruptcy filing, respectively, and $5,800 in the year (1999) the debtor filed bankruptcy;
3.  That the $17,996.73 in charges that were the subject of the non-dischargeability complaint were incurred between June and September 1998;
4.  That the charges included approximately $3,000 each at an auto shop for "gas and other", a travel agent for airline tickets, a barber/beauty shop, groceries and car rental; and
5.  That the debtor had insufficient income or assets from which he could expect to pay his bill.

*Id.* at 705.

The bankruptcy court in *Henein* dismissed the credit card issuer's complaint for failure to "submit factual allegations to establish its legal allegation of fraud pursuant to Bankruptcy Code § 523(a)(2)(A)." *Id.* at 705. The District Court affirmed. While recognizing the difficulty in pleading credit card dischargeability with particularity, the District Court found that "[b]aldly asserting the

---

**3.** The Court agrees with the Debtor that no evidentiary weight can be given to the supplemental Declaration filed by Chase. The Court therefore makes no finding as to whether Chase has a sufficient basis to allege these facts in an amended complaint.

legal elements of a claim for fraud without the necessary factual allegations is not enough to survive a motion to dismiss." *Id.* at 707. "Merely alleging that Henein's credit card debt exceeded his income at the time 'does not per se render a debt nondischargeable'." *Id.*[4]

Chase tries to distinguish *Henein* by arguing "that the case does not involve any single transaction of a suspicious nature occurring close to the time of filing." In *Henein,* Chase argues, "[t]he Court dismissed the complaint because the creditor did no more than allege the debtor made purchases in amounts that exceeded his income . . . ." (Opposition at 10).

The Court is not persuaded by Chase's attempt to distinguish *Henein.* Indeed, one of the most striking distinctions that this Court can find is that, in *Henein,* the complaint came *closer* to pleading facts sufficient to establish a cause of action under Section 523(a)(2)(A) than does Chase's Complaint in this case. The only facts alleged in Chase's Complaint are that the Debtor took cash advances (how many is not specified) in excess of $6,000, exceeded his credit limit, and repaid less than $150. There is not a single fact alleged to establish the "suspicious nature" (as Chase describes it) of the Debtor's cash advances. That Chase may have other factual allegations supporting fraud only came to light in response to the Debtor's motion to dismiss. Even if Chase's so-called facts had an evidentiary basis (which they do not), they cannot be taken into consideration when deciding a motion under Rule 12(b)(6). *See Henein,* 257 B.R. at 705 (a "court 'must limit itself to facts stated in the complaint as exhibits or incorporated in the complaint by refer-

ence.' " (citation omitted)). Further, although Chase alleges in the Complaint that "Defendant was already insolvent at the time of the cash advances and purchases, and did not have the present ability or realistic future possibility to repay the debt," it does not aver any facts to support such an allegation. (Complaint ¶ 12). Chase points out in its Opposition, that the Debtor's income exceeded his monthly expenses and suggests that it can be "fairly inferred that the debtor did not intend to pay for the cash advance that is the subject of this action." (Opposition at 3). These facts, again, are not part of the Complaint. In any event, as pointed out in *Henein,* "[m]erely alleging that [a debtor's] credit card debt exceeded his income at the time 'does not *per se* render a debt nondischargeable.' " *Henein,* 257 B.R. at 707.

For all of the foregoing reasons, the Court finds that Chase has failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b) and grants the Debtor's motion to dismiss pursuant to FRCP 12(c), without prejudice to the Chase's filing an amended complaint within twenty (20) days of the date of entry of this Decision and Order. In the event that Chase fails to re-plead its complaint, the dismissal will be with prejudice.

### *Summary Judgment*

The Debtor also has moved for summary judgment. The summary judgment motion also relies on the Debtor's argument that an implied representation of his intent to repay the debt did not arise merely because he obtained cash advances. Because the Court rejects this contention, the Debtor is not entitled to summary judgment as a matter of law. The motion for

---

**4.** *But see Colonial National Bank v. Leventhal (In re Leventhal),* 194 B.R. 26 (Bankr.S.D.N.Y. 1996) (denying motion to dismiss § 523(a)(2)(A) complaint where complaint alleged that debtor charged $29,000 at a time when he owed six other creditors $50,000 and had not been employed for 18 months).

summary judgment is, therefore, denied without prejudice to renew after the Complaint has been re-pleaded and appropriate discovery is completed.

### CONCLUSION

For all these reasons, the Defendant's motion to dismiss is granted without prejudice to the Plaintiff's filing an amended complaint no later than April 14, 2003. An answer or pleading responsive to the amended complaint must be filed by May 14, 2003.

In the event that no amended complaint is filed, the dismissal will be with prejudice.

The motion for summary judgment is denied without prejudice to renew at an appropriate time.

In the event that an amended complaint is filed, the parties are directed to appear at a pre-trial conference on June 2, 2003 at 9:30 a.m.

So Ordered.