**In re Kevin J. JOHNSON and Elizabeth Anita Spradley, Debtors.**

**Citibank (South Dakota), N.A., Plaintiff,**

**v.**

**Elizabeth Anita Spradley, Defendant.**

**Bankruptcy No. 04–12832–ess.**
**Adversary No. 04–1186–ess.**

United States Bankruptcy Court, E.D. New York.

Aug. 4, 2004.

Dennis J. O'Sullivan, Bayside, NY, for Debtors.

Doyaga & Schaefer, David J. Doyaga, of Counsel, Brooklyn, NY, for Trustee.

## MEMORANDUM DECISION GRANTING THE MOTION OF CITIBANK (SOUTH DAKOTA), N.A. FOR DEFAULT JUDGMENT

ELIZABETH S. STONG, Bankruptcy Judge.

Before the Court is the motion for default judgment (the "Motion") of Citibank (South Dakota), N.A. ("Citibank") in the above-captioned adversary proceeding (the "Adversary Proceeding"). Citibank filed a complaint (the "Complaint") commencing this Adversary Proceeding against the debtor, Elizabeth Anita Spradley (the "Defendant"), on March 31, 2004.[1] The Complaint seeks a finding that certain credit card debt owed to Citibank by the Defendant is nondischargeable under 11 U.S.C. § 523(a)(2)(A), on grounds that the Defendant obtained the extension of credit through fraud, false pretenses, and false representations. Citibank also seeks a judgment in the amount of $6,952 plus

---

1. The Defendant was represented by counsel when she filed her bankruptcy petition. The Defendant's petition does not clearly indicate whether her counsel was retained to represent her in adversary proceedings. The record shows that the Defendant's counsel was served with the Summons and Complaint, and the Motion for Default Judgment.

interest to compensate it for its damages arising from the alleged fraud.

A pre-trial conference in this Adversary Proceeding was held on May 18, 2004. On June 3, 2004, Citibank filed this Motion. A pre-trial conference and hearing on the Motion were held on July 13, 2004 (the "Hearing"), at which counsel for Citibank appeared and was heard. The Defendant did not appear at either pre-trial conference, serve an answer to the Complaint, submit written opposition to the Motion, or appear at the Hearing to oppose the Motion. After consideration of the record and the relevant factors, the Motion for a finding of nondischargeability is granted for the reasons set forth below.

## I. JURISDICTION

The Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(i). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## II. BACKGROUND

The Defendant and her husband, Kevin J. Johnson, filed a petition (the "Petition") for relief under Chapter 7 of Title 11 (the "Bankruptcy Code") on February 28, 2004 (the "Petition Date"). The Petition lists a total combined monthly income for the Defendant and her spouse of $3,794, $2,400 of which is earned by the Defendant, and total combined monthly expenses of $4,044. Petition, Schedules I and J. The Petition further shows that the Defendant had an annual income of $40,000 in 2002 and 2003, and income of $3,333.33 per month in 2004.[2] Statement of Financial Affairs, Item 1. The Defendant lists $46,607 in unsecured nonpriority debt, and $7,023 of that amount is owed to Citibank arising from the credit account in question. Petition, Schedule F. The Complaint seeks a determination that $6,952 of this amount is nondischargeable, and a judgment in that amount plus interest. Complaint, ¶ 9.

Citibank alleges that until December 2003, the Defendant regularly incurred charges and made payments on the account. Complaint, ¶ 7. Citibank asserts, and the record reflects, that in just over eight weeks, between December 18, 2003, and February 14, 2004, the Defendant made seventeen charges.[3] These charges include credit card charges by the Defendant on December 18, 2003, at Sprint PCS in the amount of $194.82; on December 19, 2003, at Burlington Coat in the amount of $43.48; on December 20, 2003, at Macy's East in the amount of $27.17; on December 20, 2003, at Macy's East in the amount of $68.08; on December 22, 2003, at GMAC Insurance in the amount of $569.06; on December 22, 2003, at Macy's

---

**2.** The Statement of Financial Affairs indicates that the Defendant's year to date income through February 28, 2004, the Petition Date, is $3,333.33. But Schedule I states the Defendant's monthly income is $3,333.33. The Statement of Financial Affairs indicates that the Defendant's annual income in 2002 and 2003 was $40,000. There is no indication that the Defendant's income as of the Petition Date decreased. Accordingly, the Court assumes that the Defendant's monthly income was $3,333.33, and year to date income was $6,666.66, as of the Petition Date.

**3.** The seventeen charges at issue include two charges made on December 18 and 19, 2003, with post dates of December 20, 2003. Citibank does not specifically identify these charges in its Memorandum, but they appear in the credit card statements annexed to the Affidavit of Facts for Entry of Judgment submitted in support of the Motion. Citibank seeks relief in an amount that includes these charges as well as $149.23 in finance charges incurred during the period in which the charges at issue were made.

East in the amount of $29.77; on December 23, 2003, at Sprint PCS in the amount of $99.90; on December 30, 2003, at Station Liquors in the amount of $75.70; on January 3, 2004 at R and I RX Center in the amount of $39.87; on January 7, 2004, at Office Max in the amount of $117.34; on January 10, 2004, at R and I RX Center in the amount of $33.39; on January 12, 2004, at Harbor Optics in the amount of $444; and on February 14, 2004, at Perfumania in the amount of $123.93. These also include cash advances by the Defendant on December 20, 2003, in the amount of $200; on December 27, 2003, in the amount of $400; and on February 7, 2004, in the amount of $350. Finally, these include a balance transfer by the Defendant from Discover Card on December 23, 2003, in the amount of $4,000. Complaint, ¶ 7; *see* Motion, Exhibit to Affidavit of Facts for Entry of Judgment ("Exhibit") (January 21 and February 18, 2004, credit card statements). Citibank asserts that between December 20, 2003, and January 12, 2004, no payment was made. Complaint, ¶ 7. However, the statement for the period ending January 21, 2004, shows a $400 payment made on December 22, 2003, by the Defendant. *See* Motion, Exhibit (January 21, 2004, credit card statement). The statement for the period ending February 18, 2004, shows that the Defendant did not make a payment during that period. *See* Motion, Exhibit (February 18, 2004, credit card statement).

Citibank asserts that these amounts are nondischargeable because "[t]he Defendant obtained the credit under false pretenses and false representations." Complaint, ¶ 8. Citibank argues that "[t]he use of the account by the [Defendant] is an express and implied representation that the [Defendant] had the intent and wherewithal to pay for the extended credit in accordance with the underlying credit terms." Complaint, ¶ 8. Citibank further

states that several factors indicate that the Defendant had an intent to defraud, including:

a. The [Defendant] accessed the personal property over a short period.

b. No payment was made toward the charges.

c. The [Defendant] owns no real property and therefore no equity exists to access to pay creditors.

d. The [Defendant] has no sufficient personal property with equity value due to automobile liens on the vehicles to liquidate to pay credit debt totaling almost $50,000.

e. While the [Defendant] shows income, the net income is insufficient to pay fixed expenses let alone almost $50,000.00 in credit debt.

f. The purchases aggregate over the sum of $1,150.00 accessed on an open-end credit account just outside 60 days of the filing of the petition for cash, luxury goods and services. As such the matter is not a presumption case, however, the advances were just days outside that period providing a strong factor of fraud.

Complaint, ¶ 8. For these reasons, Citibank argues that it is entitled to a finding that these charges are not dischargeable, and a judgment in the amount of $6,952, plus interest.

## III. DISCUSSION

### A. The Standard for Default Judgment

In this Circuit, "a debtor named as defendant in an adversary proceeding in his own bankruptcy case is always deemed to have 'appeared' in the adversary proceeding so as to require notice of a motion for a default judgment." *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 867 (2d Cir. BAP 1997). A default occurs if the defendant does not respond to the

complaint within thirty days after the issuance of the summons. *See* Fed. R. Bankr.P. 7012(a) (requiring an answer within thirty days of the issuance of the summons). Here, the summons was issued on April 1, 2004, and no answer has been filed. Docket, Case No. 04–01186, Entry 2. Therefore, under Bankruptcy Rule 7055, Citibank may move for a default judgment. *See Nickolas v. Boccio (In re Boccio)*, 281 B.R. 171, 174 (Bankr. E.D.N.Y.2002) (discussing the procedural requirements in adversary proceedings).

Bankruptcy Rule 7055 incorporates Federal Rule of Civil Procedure 55, which provides:

> the party entitled to a judgment by default shall apply to the court therefor . . . . If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

Fed.R.Civ.P. 55(b)(2); *see* Fed. R. Bankr.P. 7055.

The Defendant's failure to answer the Complaint does not, standing alone, entitle Citibank to a default judgment. *See In re Boccio*, 281 B.R. at 174 (non-defaulting party not entitled to default judgment as a matter of right); *American Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 738, 742 (Bankr.D.Conn.2002) (default is not granted as a matter of right). Indeed, "[a]s a general rule a . . . court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro se.*" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993). *But see* n. 1, *supra.*

In determining whether a default judgment is appropriate, "the court should [accept] as true all of the factual allegations of the complaint, except those relating to damages." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981). The plaintiff is also "entitled to all reasonable inferences from the evidence offered." *Id.* Yet, the Court must still decide " 'whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.' " *Smith v. Household Fin. Realty Corp. of New York (In re Smith)*, 262 B.R. 594, 597 (Bankr.E.D.N.Y. 2001) (quoting C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2688 at 280–81, 282 (1998)). And where the claim sounds in fraud, the court must evaluate the evidence presented to assure that the plaintiff has presented a prima facie case. *In re Truong*, 271 B.R. at 742. "[T]o satisfy the requirements of the prima facie case the plaintiff must present evidence from which a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Thus, the Court must consider whether the Complaint states a "legitimate cause of action," and whether Citibank has presented evidence to make out a prima facie showing of fraud under Section 523(a)(2)(A).

## B. Establishing Nondischargeability Under Section 523(a)(2)(A)

Section 523 of the Bankruptcy Codes provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). At the outset, there can be no doubt that Citibank has stated a "legitimate cause of action" in contesting the dischargeability of the charges here. *See* 11 U.S.C. § 523(a)(2)(A); *Universal Bank, N.A. v. Owen (In re Owen)*, 234 B.R. 857, 859 (Bankr.D.Conn.1999) (even where there has been a default, the court must consider whether the facts constitute a legitimate cause of action).

▮ Exceptions to discharge under Section 523 are construed narrowly, and in favor of the debtor. *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir.2000). *See* 4 COLLIER ON BANKRUPTCY ¶ 523.05 (15th ed. rev.2004) ("the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor"). This rule of construction springs from a key objective of the Bankruptcy Code—to provide "the debtor 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *In re Renshaw*, 222 F.3d at 86 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). This is because "[a] fundamental objective of bankruptcy law is to provide a fresh start for the honest but unfortunate debtor which is manifested by the general policy of discharge of a debtor's indebtedness." *AT & T Universal Card Serv. Corp. v. Akdogan (In re Akdogan)*, 204 B.R. 90, 93 (Bankr.E.D.N.Y.1997). *See Bank of Am. v. Jarczyk*, 268 B.R. 17, 21 (W.D.N.Y.2001)

("exceptions to discharge under the Bankruptcy Code are narrowly construed against the creditor so as to fulfill bankruptcy's goal of giving the debtor a fresh start").

▮ In seeking an exception to discharge, the creditor bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The creditor must establish each of five elements: first, that the debtor made a false representation; second, that at the time it was made, the debtor knew it was false; third, that the debtor made the representation with the intent of deceiving the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained loss or damages that was proximately caused by the false representation. *Chase Manhattan Bank, USA, N.A. v. Giuffrida (In re Giuffrida)*, 302 B.R. 119, 123 (Bankr. E.D.N.Y.2003). Where, as here, the debtor has defaulted, the creditor must make out a prima facie case as to each of these elements in order to be entitled to relief, and a failure to make the necessary showing as to any element will prevent a default judgment from being entered. *In re Truong*, 271 B.R. at 742 (to obtain a default judgment, the factfinder must reasonably find that all necessary elements of the cause of action are satisfied based on the evidence presented). Accordingly, the Court will consider the elements in turn.

*1. Whether the debtor made a false representation*

The first element that must be addressed is whether the debtor made a false representation to the creditor. *In re Giuffrida*, 302 B.R. at 123. Citibank argues that the Defendant's use of a credit card, signature on a cash advance slip, or execution of a ready credit check constitutes a

promise by the Defendant to pay the obligation incurred at some future time, and an implied representation that the Defendant has both the intent and the ability to repay.

■ This Court agrees with those courts in the Second Circuit, and the Fifth, Sixth, Eighth, and Ninth Circuits, that have found that "each time a cardholder uses his credit card, he impliedly represents to the issuing bank that he intends to repay the debt incurred." *Jarczyk*, 268 B.R. at 21 (citing cases). *See In re Giuffrida*, 302 B.R. at 125; *Colonial Nat'l Bank USA v. Leventhal (In re Leventhal)*, 194 B.R. 26, 30 (Bankr.S.D.N.Y.1996); *FCC Nat'l Bank v. Cacciatore (In re Cacciatore)*, 1998 WL 412644, at *1 (E.D.N.Y. 1998); *Citicorp Nat'l Credit & Mortgage Serv. for Citibank, N.A. v. Welch (In re Welch)*, 208 B.R. 107, 110 (S.D.N.Y.1997); *AT & T Universal Card Serv. v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir.2001); *Rembert v. AT & T Universal Card Serv. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998); *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (8th Cir. BAP 2000); *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1284 (9th Cir.1996).

■ Different issues are raised, however, by Citibank's argument that, each time the Defendant accessed credit, she made an implied representation that she had the ability to repay the debt. While courts have reached different conclusions, this Court is persuaded that a debtor does not make an implied representation as to his or her present ability, as opposed to intent, to repay a debt when he or she makes a credit card charge or takes a cash advance. *See In re Anastas*, 94 F.3d at 1285 ("the representation made by the card holder in a credit card transaction is not that he has

an ability to repay the debt"); *In re Giuffrida*, 302 B.R. at 125 ("Lack of ability to repay … is not implied by credit card usage."); *Jarczyk*, 268 B.R. at 23 (use of a credit card carries no implied representation of an ability to pay); *MBNA Am. v. Parkhurst (In re Parkhurst)*, 202 B.R. 816, 822 (Bankr.N.D.N.Y.1996) ("one should not imply any representation on the debtor's part concerning his/her ability to pay at the time the card was used."); *In re Leventhal*, 194 B.R. at 30 ("it is neither factually nor legally appropriate to imply or infer a representation of ability to repay"). But see *First Card Serv., Inc. v. Flynn (In re Flynn)*, 184 B.R. 8, 9 (Bankr.E.D.N.Y. 1995) ("Each time a credit card is used for payment, the cardholder represents that he has the ability and the intent to repay the debt.").

This conclusion is consistent with the circumstances under which many debtors may turn to consumer credit instruments such as credit cards and convenience checks. As at least one court has pointed out, "an implication [of an ability to pay] is contrary to the notion of credit." *Jarczyk*, 268 B.R. at 23. In fact, "[o]ne of the principal reasons people rely on credit is a present lack of ability to pay." *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332 (Bankr.N.D.Ill. 1995). *See In re Rembert*, 141 F.3d at 281 ("To measure a debtor's intention to pay, without more, would be contrary to one of the main reasons consumers use credit cards: because they often lack the ability to pay in full at the time they desire credit."). Further, implying a representation of an ability to pay "has been criticized for improperly shifting the burden of proof, making the debtor a guarantor of her financial condition." *In re Mercer*, 246 F.3d at 404–05. And finally, such a representation "is *not* actionable under § 523(a)(2)(A) [because] it excludes from

its scope 'a statement respecting the debtor's ... *financial condition*." 246 F.3d at 405 (emphasis in original).

In sum, the record shows that Citibank has alleged facts sufficient to support a prima facie case that the Defendant made representations as to her intent to repay that proved to be false. It does not, without more, support an inference that the Defendant made representations as to her ability to repay that proved to be false. Accordingly, the Court turns to the next factor, whether the Defendant knew that her representations concerning an intent to pay were false when made.

2. *Whether the debtor knew the representation was false at the time it was made*

 The second element that must be established is that at the time the debtor made the implied representation of an intent to repay, the debtor knew the representation was false. *In re Giuffrida*, 302 B.R. at 123. " 'A misrepresentation is fraudulent if the maker ... knows or believes ... the matter is *not* as' represented, or 'does *not* have the confidence in the accuracy of his representation' as stated or implied, or 'knows ... he does *not* have the basis for his representation' as stated or implied." *In re Mercer*, 246 F.3d at 407 (emphasis in original) (quoting Restatement (Second) of Torts § 526 (1977)). This is a critical element, as knowledge of falsity at the time that a statement is made marks the boundary between falsity and fraud.

 Whether a debtor intended to defraud a creditor within the scope of Section 523(a)(2)(A) is measured by the debtor's "actual state of mind ... at the time the charges were incurred." *Field v. Mans*, 516 U.S. 59, 70–72, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Allegations of failure to perform are not a sufficient basis to infer a lack of intent to perform at the time the obligation was incurred. *In re Leventhal*, 194 B.R. at 31 (citing *In re Murphy*, 190 B.R. at 333–34). Rather, the creditor "must set forth sufficient specific evidence of a misrepresentation by the Debtor upon which it relied." *In re Akdogan*, 204 B.R. at 95. The allegations must show that the "debtor knew full well that any professed intention to repay was false or was known by the debtor not to be well-grounded, and that he or she nonetheless deliberately used the card to obtain goods he or she knew were beyond his or her ability to pay." *In re Parkhurst*, 202 B.R. at 822. At the same time, "[b]ecause 'few men will admit to a fraudulent intent, such intent must be established by circumstantial evidence.' " *In re Giuffrida*, 302 B.R. at 125–26 (quoting *Manufacturers Hanover Trust Co. v. Pannell (In re Pannell)*, 27 B.R. 298, 302 (Bankr.E.D.N.Y.1983)).

 Courts consider many objective factors to discern the debtor's subjective intent, including circumstantial factors suggesting that a debtor did not intend to repay the debt at the time credit charges or cash advances were incurred. *See In re Leventhal*, 194 B.R. at 31. In *Manufacturers Hanover Trust v. Dougherty (In re Dougherty)*, 143 B.R. 23 (Bankr.E.D.N.Y. 1992), the court identified several factors to consider, as follows:

1. The length of time between the charges and the filing of bankruptcy;
2. Whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges;
4. The amount of the charges;
5. The financial condition of the debtor when charges were made;
6. Whether the charges exceeded the credit limit of the account [ ];

7. Whether there were multiple charges on the same day;

8. Whether the debtor was employed;

9. The financial sophistication of the debtor[;]

10. Whether the debtor's spending habits suddenly changed; [and]

11. Whether the purchases were made for luxuries or necessities.

*In re Dougherty,* 143 B.R. at 25. Courts also consider whether the debtor had an objective ability to repay at the time the debt was incurred. *See Jarczyk,* 268 B.R. at 23 ("a complete lack of ability to repay is one factor that may be considered in determining the debtor's subjective state of mind at the time of credit card usage"); *In re Dougherty,* 143 B.R. at 25 (same); *In re Giuffrida,* 302 B.R. at 125 (same); *In re Leventhal,* 194 B.R. at 30 (same).

 While these factors are neither exclusive nor dispositive, they provide useful guidance in considering whether Citibank has made out a prima facie case that the Defendant had the subjective intent to defraud Citibank at the time that the credit charges and cash advance were incurred. Here, as described below, several of these factors support the conclusion that Citibank has made out a prima facie case that the Defendant knowingly made false representations as to her intent to repay the charges at issue at the time the charges were made.

*The length of time between the charges and the filing of bankruptcy*

Citibank alleges, and the record shows, that the charges at issue were made by the Defendant between December 18, 2003, and January 12, 2004, and then between February 7, 2004, and February 14, 2004. Complaint, ¶ 7. The Defendant filed her bankruptcy petition on February 28, 2004. Complaint, ¶ 5. This shows that the Defendant began to incur the charges ap-proximately ten weeks before filing for bankruptcy. The charges continued until approximately two weeks before she filed for bankruptcy. Thus, this factor supports an inference of fraudulent intent.

*Whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made*

The record shows that the Defendant consulted with an attorney's office on February 7, 2004, the same day that one of the cash advances at issue was made, and a week before the last charge at issue occurred, on February 14, 2004. *See* Petition, Statement Pursuant to E.D.N.Y. LBR 2017–1 (stating that the Defendant had a personal intake interview with a paralegal on February 7, 2004). Accordingly, this factor supports an inference of fraudulent intent, particularly as to the February 7 and 14, 2004, charges.

*The number and amount of the charges*

Citibank alleges, and the record shows, that a total of seventeen charges made over a period of about eight weeks are at issue. These include credit card charges totaling $1,866.31, cash advances totaling $950, and a $4,000 balance transfer from Discover Card. The Defendant's number and total amount of charges are comparable to, but not as extreme as, circumstances present in successful challenges to dischargeability where debtors used their credit accounts freely and frequently in the period immediately preceding their bankruptcy filing. *See, e.g., Jarczyk,* 268 B.R. at 19–20 (summary judgment for debtor reversed where debtor charged over $7,000 in six months before filing for bankruptcy). Thus, this factor lends some support to an inference of fraudulent intent.

*Whether there were multiple charges on the same day*

Citibank alleges, and the record shows, that several of the charges at issue were

made on the same day, or over a period of a few days. For example, on December 20, 2003, the record shows that the Defendant made charges at Macy's East in the amounts of $27.17 and $68.08, and accessed a $200 cash advance. In addition, the Defendant made two charges two days later, on December 22, 2003, for GMAC Insurance in the amount of $569.06, and at Macy's East in the amount of $29.77; and two charges two days earlier, on December 18 and 19, 2003, at Sprint PCS in the amount of $194.82, and at Burlington Coat in the amount of $43.48. *See* Motion, Exhibit (January 21, 2004, credit card statement). Because the Defendant accessed credit seven times over a five-day period, and made multiple charges on the same day, this factor supports an inference of fraudulent intent.

*The financial sophistication of the debtor*

The record shows that the Defendant is working as an accountant, and further, that she has been employed in that capacity for at least four years. *See* Petition, Schedule I. In the absence of any contrary argument by the Defendant, the nature of the Defendant's employment supports an inference that she has some financial sophistication and, for example, is familiar with and able to make informed decisions about the use of credit. Accordingly, this factor supports an inference of fraudulent intent.

*Whether the debtor's spending habits suddenly changed*

Citibank alleges, and the record shows, that before the charges at issue were made, the Defendant had an account balance of $975.28, indicating some prior usage of her account. In addition, the Complaint's allegations make reference to the Defendant's "regular usage and payment" of her account until December 2003. Complaint, ¶ 7. In the absence of any contrary argument by the Defendant, these allega-

tions support an inference that the charges at issue deviated from the Defendant's pattern of "regular" use. As a result, this factor lends some support to an inference of fraudulent intent.

*Whether the purchases were made for luxuries or necessities*

Citibank alleges, and the record shows, that the Defendant made two charges on December 20, 2003, at Macy's East; a charge on December 30, 2003, at Station Liquors; a charge on January 12, 2004, at Harbor Optics; and a charge on February 14, 2004, at Perfumania. *See* Motion, Exhibit (January 21, 2004, and February 18, 2004, credit card statements). The Defendant also accessed three cash advances totaling $950 between December 20, 2003, and February 7, 2004. While it is possible that these and other charges and cash advances were for necessities, the Defendant has not come forward with any such argument. Accordingly, and in the absence of any contrary argument by the Defendant, these allegations support an inference that these charges were for items that were more in the nature of luxuries than necessities. Therefore, this factor lends support to the inference of an intent to defraud.

In sum, the record shows that Citibank has alleged facts sufficient to support a prima facie case that the Defendant knew the representations were false at the time they were made. This conclusion is based on the undisputed allegations, and the inferences that they support, including that the charges at issue were incurred in just over two months before the Defendant filed for bankruptcy; that several of the charges at issue were incurred shortly before, and two were incurred the same day or after, the Defendant consulted with an attorney's office about filing for bankruptcy; that the Defendant made numerous charges totaling almost $7,000 in just eight

weeks, including multiple charges over a period of a few days; that the Defendant has worked for at least four years as an accountant; that the Defendant's use of her account was "regular" before the charges at issue were incurred; and that at least some of the charges at issue were for items that are more in the nature of luxuries than necessities. This conclusion is also based on the fact that the Defendant has not appeared in this matter to deny or offer an alternative explanation for Citibank's allegations. Accordingly, the Court turns to the next factor, whether the Defendant made the representation with the intent of deceiving the creditor.

### 3. Whether the debtor made the representation with the intent of deceiving the creditor

 The third element that must be established is that at the time the debtor made the false representation, he or she did so with the intention of deceiving the creditor. *In re Giuffrida*, 302 B.R. at 123. That is, Citibank must allege facts sufficient to support a prima facie case that the Defendant made the false representation with the intention of deceiving it. Because the "intent to defraud is rarely proven by direct evidence," courts assess this element using a "totality of the circumstances" approach to discern the debtor's subjective intent. *In re Truong*, 271 B.R. at 745. To that end, courts generally look to the same factors used to determine the second element, whether the debtor knew the representation was false at the time it was made, in making this determination. *Colonial Nat'l Bank v. Carrier (In re Carrier)*, 181 B.R. 742, 747 (Bankr.S.D.N.Y. 1995) ("Few debtors admit an intent to deceive, and the creditor must prove that intent circumstantially. Courts have identified twelve factors to be considered in deciding whether the requisite wrongful intent exists.").

 Here, taking account of the "totality of circumstances" surrounding the charges at issue, several factors discussed above also weigh in favor of supporting the inference that the Defendant made the representations with the intention of deceiving Citibank. The length of time between the charges and the filing of bankruptcy, consulting an attorney concerning the filing of bankruptcy before the charges were made, multiple charges on the same day, the financial sophistication of the Defendant, and the fact that at least some of the charges at issue were for items that are more in the nature of luxuries than necessities, all support the inference that when the Defendant made false representations as to her intent to repay, she did so with the intent of deceiving Citibank. These circumstances, taken together with the Defendant's failure to offer any alternative explanation as to the charges at issue, show that Citibank has made out a prima facie case that the Defendant made the false representations with the intent of deceiving the creditor. Therefore, the Court turns to the next element, whether Citibank justifiably relied on the Defendant's false representations.

### 4. Whether the creditor justifiably relied on the representation

 The fourth element that must be established is whether the creditor justifiably relied on the false representation made by the debtor. *In re Giuffrida*, 302 B.R. at 123. Thus, Citibank must show that it justifiably relied on the Defendant's false representations as to her intent to repay the charges at issue at the time they were made. *See* Restatement (Second) of Torts § 537 (1977) ("the recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it, if but only if, . . . his reliance is

justifiable"). In considering whether a creditor justifiably relied on a debtor's false representations, the focus "should be on whether [the creditor], based on its credit screening and its relationship with [the debtor] during her ... card-use, had reason to believe she would *not* carry out her representation, through card-use, of intent to pay." *In re Mercer*, 246 F.3d at 423 (emphasis in original).

 This element is important, as one court observed, "[s]ince all the elements must be sustained, ... a bankrupt may give a materially false financial statement in writing, know it is false and intend out-and-out to deceive, yet if the creditor did not rely upon the statement, the debt is still discharged." *Nationwide Fin. Corp. v. Smith (In re Smith)*, 2 B.R. 276, 279 (Bankr.E.D.Va.1980). A creditor "is required to use [its] senses, and cannot recover if [it] blindly relies upon a misrepresentation the falsity of which would be patent to [it] if [it] had utilized [its] opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. at 71, 116 S.Ct. 437 (quoting Restatement (Second) of Torts § 541 (1977)). But the necessary level of inquiry is not onerous. As the Supreme Court stated, a creditor's investigation "need not be more than cursory." *Daly v. Braizblot (In re Braizblot)*, 194 B.R. 14, 21 (Bankr.E.D.N.Y.1996) (citing *Field v. Mans*, 516 U.S. at 71, 116 S.Ct. 437).

 Accordingly, a creditor must allege facts sufficient to support a prima facie case showing that it conducted a credit check of the debtor or that "circumstances otherwise exist which demonstrate credit was not extended blindly." *In re Akdogan*, 204 B.R. at 97. As another court observed, "[t]he credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable." *In re Anastas*, 94 F.3d at 1286.

Thus, if a creditor's allegations or the record show that at the time the charges at issue were incurred, the debtor maintained a balance within his or her credit limits and made the payments required under the credit agreement, those circumstances would show an absence of "red flags" and would support an inference that the creditor justifiably relied on the debtor's false representations as to his or her intent to repay. And alternatively, if the creditor's allegations or the record show that the debtor was substantially in default at the time the charges at issue were incurred, or that its initial investigation of the debtor revealed that he or she was in default on other existing credit card accounts, or that a serious question otherwise existed as to whether it was reasonable to open the account, those circumstances could amount to "red flags" showing that the creditor was not justified in relying on the debtor's false representations.

 Here, Citibank does not allege, and the record does not show, that there were "red flags" present that should have alerted Citibank not to rely on the Defendant's false representations that she had the intent to repay the charges at the time that they were made. Rather, the Complaint alleges that "the [Defendant] accessed credit with regular usage and payments until December 2003," and that Citibank "extended credit based on the prior zero balance and lack of default on the account." Complaint, ¶ 8. And the Defendant has not disputed any of Citibank's allegations, or suggested an alternative explanation as to why Citibank's reliance on her representations would not have been justified. For these reasons, Citibank has made out a prima facie case

that it justifiably relied on the Defendant's false representations. Accordingly, the Court turns to the next and final element, whether the creditor sustained loss or damage as the proximate consequence of the debtor's false representations.

*5. Whether the creditor sustained loss or damage as the proximate consequence of the false representations*

■ The final element that must be addressed is whether the false representation proximately caused the creditor to sustain loss or damage. *In re Giuffrida,* 302 B.R. at 123. If all of the other elements have been satisfied, and in particular, if the creditor has shown that it extended credit, and therefore incurred an expense, and the debtor does not show that he or she has repaid the obligation, then it is likely that this element, too, will be satisfied. "[I]t is the debtor's use of the credit card that prompts the issuer to extend credit, and thereby results in loss to the issuer when the debt is not repaid." *Jarczyk,* 268 B.R. at 25. *See also In re Mercer,* 246 F.3d at 414 ("the debtor's card-use ... causes the issuer's loss when it reimburses the merchant and the debtor does *not* pay") (emphasis in original). "Equally obvious, if she had *not* used the card, [the creditor] would *not* have made a loan; nothing would have occurred." *In re Mercer,* 246 F.3d at 415 (emphasis in original).

Here, Citibank alleges, and the record shows, that credit was extended by Citibank to the Defendant on some seventeen occasions between December 18, 2003, and February 14, 2004, in the form of credit card charges, cash advances, and a balance transfer, in reliance on her false representations that she intended to repay the amounts incurred. Citibank also alleges that those amounts have not been repaid, and the Defendant has not shown otherwise. *See* Petition, Schedule F (listing the Defendant's unsecured nonpriority obli-

gation to Citibank in the amount of $7,023). Further, the Defendant's representations as to her intention to pay was a factor in Citibank's decision to extend credit. Complaint, ¶ 8 ("The creditor justifiably relied on the representations and extended credit ..."). Accordingly, Citibank has established a prima facie case that it sustained a loss that was proximately caused by the false representations of the Defendant.

## IV. CONCLUSION

On a motion for a default judgment in an adversary proceeding under Section 523(a)(2)(A) of the Bankruptcy Code, the plaintiff must present a prima facie case from which "the factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." *Fisher,* 114 F.3d at 1336. The Court should accept as true "all of the factual allegations of the complaint, except those relating to damages," and draw "all reasonable inferences from the evidence offered." *Au Bon Pain Corp.,* 653 F.2d at 65.

Here, the undisputed allegations of the Complaint, the reasonable inferences that they support, and the record before the Court make out a prima facie case that the Defendant knowingly made false representations as to her intent to repay, with the intent to deceive Citibank, at the time that she made the charges at issue. They also make out a prima facie case that Citibank justifiably relied on the Defendant's false representations, and suffered a loss that was proximately caused by those false representations. Finally, the Defendant has not appeared to oppose the Complaint, or to offer any alternative explanation for the matters alleged. For these reasons, the Motion for a Default Judgment will be granted to the extent that the charges at issue, totaling $6,952, are declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). An order in accordance with this Memo-

randum Decision shall be entered simultaneously herewith.

### ORDER GRANTING THE MOTION OF CITIBANK (SOUTH DAKOTA), N.A. FOR DEFAULT JUDGMENT

Upon the filing of the motion for default judgment by Citibank (South Dakota), N.A. ("Citibank"), on June 3, 2004, in this Adversary Proceeding commenced by Citibank on March 31, 2004, to determine the nondischargeability of a certain debt; and the Court having considered the arguments presented by the papers and the oral arguments of Citibank presented at the July 13, 2004, hearing; and for the reasons set forth in this Court's Memorandum Decision dated August 4, 2004; it is hereby.

ORDERED, that Citibank's motion for default judgment is granted to the extent that the charges at issue, totaling $6,952, are declared nondischargeable under 11 U.S.C. § 523(a)(2)(A).